FRANK A. BERRY vs. PHILIP O'CONNOR.

December 22, 1884.

| 33 | 29 |
| 47 | 481 |
| 33 | 29 |
| 48 | 398 |
| 33 | 29 |
| 60 | 372 |
| 33 | 29 |
| 74 | 445 |

**Fraudulent Conveyance—Mortgage—Future Advances.**—A mortgage may properly be made to secure future advances, and hence it is not on that account fraudulent as a matter of law as respects the mortgagor's creditors.

**Same.**—The fact that a mortgage is given to secure a larger sum than is actually due from the mortgagor to the mortgagee, or that its condition fails to describe the real character of the indebtedness or liability intended to be secured, does not necessarily render the mortgage fraudulent as respects the mortgagor's creditors.

**Same—Insolvent Law—Preferential Mortgage.**—Our insolvent law (Laws 1881, c. 148,) does not render preferential mortgages fraudulent or void as respects the mortgagor's creditors, except in proceedings under it.

Action upon promissory notes. Upon an affidavit by plaintiff that the defendant had "assigned and disposed of a large portion of his property with the intent to delay and defraud his creditors, and that said defendant is about to assign and dispose of all the balance of his property with intent to delay and defraud his creditors and the plaintiff," a writ of attachment was allowed and issued from the district court for Rice county, on October 19, 1883. Upon an affidavit by defendant that the statements in plaintiff's affidavit were wholly false in every respect and particular, an order to show cause why the attachment should not be vacated was made by the court. Upon the hearing on this order, the plaintiff read affidavits alleging, substantially, that during the month of June, 1883, the defendant, being heavily indebted and insolvent, secretly covered with chattel mortgages all his personal property not exempt from levy, amounting to about $10,000, and specifying the following, viz.: two chattel mortgages for $6,000 to one Chauncey Matthews, dated June 9, 1883, and filed June 16, 1883, upon horses, cattle, and hogs, agricultural machinery and crops; a chattel mortgage for $1,500 to one John Sheeran, dated June 14, 1883, and filed October 27, 1883, upon growing crops; a chattel mortgage for $882.35 to C. H. and L. J. McCormick, dated

August 9, 1882, and filed the same day, upon three harvesters and other personal property; a chattel mortgage for $150 to one H. M. Matteson, dated August 7, 1883, and filed August 14, 1883, upon a mower, wheat, and other property; a chattel mortgage for $1,500 to one T. J. McCarthy, dated October 26, 1883, and filed October 27, 1883, given in place of the mortgage to Sheeran; a chattel mortgage for $2,000 to T. J. McCarthy, dated October 26, 1883, and filed October 29, 1883, upon stock, given to secure an indebtedness for goods sold and upon a note amounting to $1,035, indorsements to the amount of $743, and indebtedness for goods to be sold and furnished prior to May 1, 1884. It was also stated that the mortgages to Matthews, Sheeran and McCarthy were fraudulent and void, and were given to secure no indebtedness, but for the purpose of covering up defendant's property and placing it beyond the reach of creditors. Voluminous counter-affidavits were read by defendant, in which affidavits the giving of the chattel mortgages described was admitted, but it was alleged that the same were all given in good faith, and to secure actual debts as set out in the mortgages.

From these counter-affidavits it further appeared that Matthews also held a mortgage upon the real estate of defendant, dated June 15, 1881, for the sum of $10,000, with interest at eight per cent. per annum; that defendant had defaulted in the payment of his taxes for three years, and had not paid the interest upon the real-estate mortgage for 1882 and 1883; that Matthews had been compelled to pay over $592 for taxes to protect his mortgage; that defendant had no means to raise money to pay the interest and taxes except by raising and selling crops, and that the McCormicks were threatening to foreclose their mortgage upon the farm machinery; that thereupon Matthews, through his agent Matteson, agreed to furnish the money necessary to pay the McCormick mortgage and the necessary means with which to harvest, thresh and market defendant's crops, and received the two chattel mortgages for $6,000, to secure such taxes and interest, and such money as should be advanced under the above agreement, as well as the original indebtedness of $10,000.

Plaintiff appeals from an order by *Buckham*, J., vacating the writ of attachment.

*J. H. Case,* for appellant, cited Jones on Chattel Mortgages, 381, 395; Gen. St. 1878, c. 41, § 14; Laws 1881, c. 148, §§ 2–4; *Braley* v. *Byrnes,* 25 Minn. 297; *Horton* v. *Williams,* 21 Minn. 187; *Stein* v. *Munch,* 24 Minn. 390; *Mann* v. *Flower,* 25 Minn. 500; *Chophard* v. *Bayard,* 4 Minn. 418, (533;) *Gere* v. *Murray,* 6 Minn. 213, (305;) *Tupper* v. *Thompson,* 26 Minn. 385; *Wood* v. *Lowry,* 17 Wend. 492; *Smith* v. *Acker,* 23 Wend. 653; *Russell* v. *Winne,* 37 N. Y. 591; *Butts* v. *Peacock,* 23 Wis. 359; *Robinson* v. *Elliott,* 22 Wall. 513.

*Geo. N. Baxter,* for respondent.

BERRY, J.    Appeal from an order vacating an attachment issued upon affidavits setting forth that defendant had assigned and disposed of a large portion of his property, and was about to assign and dispose of "all the balance" thereof, with intent to delay and defraud his creditors, of whom plaintiff was one.    Upon a careful perusal of the affidavits used upon the motion to vacate, we are of opinion that, as respects the matters of *fact* in dispute between the parties, the affidavits read by plaintiff are fully met by those read by defendant, so that, so far as the order appealed from rests upon a determination of disputed matters of fact, we see no reason to disturb the result arrived at by the court below.

It remains to pass upon sundry points made by plaintiff in support of his contention that the undisputed facts of the case show that certain chattel mortgages made by defendant, and relied upon in support of the attachment, are fraudulent, as respects creditors, as matter of law.

And, *first,* a mortgage may properly be made to secure future advances.    *Madigan* v. *Mead,* 31 Minn. 94; *Brown* v. *Kiefer,* 71 N. Y. 610; *Ackerman* v. *Hunsicker,* 85 N. Y. 43; *Boswell* v. *Goodwin,* 31 Conn. 74; *Jones* v. *Guaranty & Indemnity Co.,* 101 U. S. 622; Jones, Ch. Mortg. §§ 94–97.    It follows that a mortgage is not fraudulent *per se,* or as a matter of law, as respects the mortgagor's creditors, because given in whole or in part to secure such advances.

*Second*—Our insolvent law (Laws 1881, c. 148,) does not have the effect to render mortgages fraudulent or void as respects the mortgagor's creditors, on the ground that they are preferential, except in proceedings under it.    Outside of such proceedings the preferences

are not *per se,* or as a matter of law, objectionable.  *Smith* v. *Deidrick,* 30 Minn. 60.

*Third*—The fact that a mortgage is given to secure a larger sum than is actually due from the mortgagor to the mortgagee, or that its condition fails to describe the real character of the indebtedness or liability intended to be secured, does not necessarily render the mortgage fraudulent as respects the mortgagor's creditors.  The question still is, was it made with intent to hinder, delay, or defraud the mortgagor's creditors?  *Minor* v. *Sheehan,* 30 Minn. 419, and cases cited; Jones, Chat. Mortg. § 96.

This disposes of all the positions of appellant to which we deem it necessary to advert specifically, and the result is that the order vacating the attachment is affirmed.