THOMAS MACKELLAR *vs.* CHARLES A. PILLSBURY *et al.*

Argued Feb. 3, 1892. Decided Feb. 10, 1892.

**Preference Given One Creditor Over Others.**—A preference by an insolvent debtor of one creditor over others is not unlawful, except as prohibited by the insolvent law of 1881, and is voidable only in proceedings under and in aid of that act.

**Assignment for Benefit of Creditors.**—An assignment for the benefit of creditors, when executed by the assignor and accepted by the assignee, creates a valid trust, which cannot be changed or revoked by the assignor or by the joint act of both assignor and assignee, or by the court on their application.

**Nondelivery as Evidence of Fraud.**—Where a sale of chattels is not accompanied by an immediate delivery, and followed by an actual and continued change of possession, it merely raises a presumption that the sale was fraudulent, which it is competent for the vendee to overcome by showing that it was in fact made in good faith.

**Title may Pass although the Goods Sold are not Separated from the Mass.**—Where a certain number of articles are sold out of a greater number of exactly the same kind and quality, with the intention that the title should presently pass, and where the vendee has the absolute right, at any time, to take his amount or number out of the whole quantity, this is sufficient to pass the title, although the specific articles are not actually designated, or separated from the remainder.

Appeal by intervener, Samuel A. Booth, from an order of the district court of Hennepin county, *Pond,* J., made September 30, 1891, denying his motion for a new trial.

On January 3, 1890, Charles E. Cottrell was a manufacturer of flour barrels at Minneapolis, and had there in his cooperage ware-

house a large quantity of barrels and material for making barrels. He was largely indebted. Some of his notes and acceptances were outstanding in the Twenty-Third Ward Bank of New York city. On that day he made a bill of sale to the plaintiff, Thomas Mackellar, of a large quantity of this barrel material for $25,002.48. Plaintiff was president of this bank, and paid the price by drafts, which Cottrell indorsed and applied on the indebtedness to that bank. On January 20, 1890, it was discovered that there was a shortage in the stock conveyed by the bill of sale of January 3, 1890, and thereupon Cottrell made another bill of sale to Mackellar of 12,384 barrels, called Brazilian, to cover the deficiency. Cottrell then had in his warehouse more than this number of such barrels, but these so sold were not separated or set apart from the mass. Of these barrels Cottrell, as agent for plaintiff, sold and delivered 11,531 on March 10th and 22d, and between those days, to Chas. A. Pillsbury & Co., at 35 cents each. This suit was brought to recover the price, $4,035.85.

On March 27, 1890, Cottrell made a general assignment of all his nonexempt property to Samuel A. Booth, for the benefit of all his creditors alike, under the laws of 1876, ch. 44. Booth accepted the trust, and gave bond, approved and filed on March 28, 1890. Three days afterwards Cottrell and Booth made application to the district court of Hennepin county to amend the assignment by inserting words so that the proceeds of the assigned estate should be paid to such only of his creditors as should file releases of their claims, and accept their dividends in full of their debts, under Laws 1881, ch. 148. That court on March 31, 1890, granted the application, and made an order that the assignment be so amended.

Booth, the assignee, then intervened in this action, and claimed that the sale of the barrels to plaintiff was made to hinder, delay, and defraud Cottrell's creditors, and to give the Twenty-Third Ward Bank a preference, and that there was no actual delivery and continued change of the possession of the property.

Another action was brought by McKellar against Booth to recover from him a part of the material remaining upon Cottrell's premises at the time of the assignment, and which Booth refused to deliver. The two actions were tried together below, and were argued in this

court at the same time, and involved substantially the same questions.

The court made findings for plaintiff in both actions. The assignee, Booth, moved in each action for a new trial, and, being denied, appealed.

*Ripley, Brennan & Booth,* for appellant.

*Emery, Hall & Fletcher,* for respondent.

MITCHELL, J. In these cases the appellant, Booth, as assignee of C. E. Cottrell, assails the validity of the sale of certain personal property by his assignor to the plaintiff, Mackellar, on two grounds, to wit: *First,* that it was void under the insolvent law of 1881, ch. 148, because made in contemplation of insolvency with a view of giving a preference to one creditor over others; and, *second,* that it was void, on common-law principles, because made with intent to hinder, delay, and defraud creditors. A mere preference by a debtor of one creditor to another is not fraudulent or void at common law, though the preference may have the incidental effect of hindering the latter from the collection of his debt. Such preferences are not unlawful except as forbidden by the insolvent law of 1881, and they are voidable only in favor of proceedings under and in aid of that act. Outside of such proceedings preferences are not *per se* objectionable. *Vose* v. *Stickney,* 19 Minn. 367, (Gil. 312;) *Smith* v. *Deidrick,* 30 Minn. 60, (14 N. W. Rep. 262;) *Berry* v. *O'Connor,* 33 Minn. 29, (21 N. W. Rep. 840.) It therefore becomes important to ascertain the *status* of appellant, and the character of the assignment under which he claims, in order to determine whether he is in position to make this attack on the sale in question. It is conceded that the assignment from Cottrell to appellant was not executed under the insolvent law of 1881, but was merely a common-law assignment for the benefit of creditors, as regulated by Laws 1876, ch. 44. But it appears that after the assignment was executed, and the assignee had accepted the trust, the assignor and assignee made an *ex parte* application to the court, alleging that the intention was to execute an assignment under the insolvent law of 1881, but that a mistake was made through the use of a wrong blank in drafting the instrument, and that upon this *ex parte* application the court as-

sumed to make a decree amending and reforming the assignment so as to conform to the intentions of the assignor and assignee by inserting therein the necessary provisions to make it an assignment under the insolvent law of 1881. We had supposed that, if anything was settled in the law, it was that an assignment for the benefit of creditors, when executed by the assignor and accepted by the assignee, creates a valid trust, which cannot be changed or revoked by the assignor, or by the joint act of both assignor and assignee; and what the assignor and assignee cannot do, certainly the court cannot do for them. Indeed, the appellant admits this; but his contention is that it is only the beneficiaries under the assignment—the creditors—who can object, and that the plaintiff is not in position to raise the question, or assail collaterally the action of the court. We cannot assent to this proposition. The issue here is one of title to the property, and the question is, what is the nature and extent of the assignee's title, and what, if any, objections is he in position to make to plaintiff's claim of title? The assignee's title, if any, rests exclusively upon the deed of assignment. The action of the court in assuming to change the nature of a vested trust was an absolute nullity, and this the plaintiff had a right to assert as against an attempt of the assignee to set up the void decree for the purpose of assailing his title. The appellant, therefore, was not in position to attack the sale as being an unlawful preference under the insolvent law of 1881, and that question is wholly out of the case.

2. It was open, however, for the assignee to avoid the sale as fraudulent on any grounds upon which creditors of the assignor might avoid it. 1878 G. S. ch. 41, § 27. The principal ground upon which it is claimed that the sale was fraudulent and void as against creditors is that it was not accompanied by an immediate delivery, or followed by an actual and continued change of possession. 1878 G. S. ch. 41, § 15. Assuming that this was so, yet the effect of it would be merely to raise the presumption that the sale was fraudulent. It would still be competent for the vendee to overcome this presumption by proof of facts showing that the sale was in fact made in good faith, and without any intent to hinder, delay, or defraud the vendor's creditors; and under the statute the questions of

good or bad faith and fraudulent intent are questions of fact for the jury or trial court. 1878 G. S. ch. 41, § 20; *Vose* v. *Stickney*, 19 Minn. 367, (Gil. 312;) *Molm* v. *Barton*, 27 Minn. 530, (S N. W. Rep. 765.) The court has expressly found that the sale was made in good faith, and without any intent on the part of said Cottrell or plaintiff to hinder, delay, or defraud creditors.

Upon an examination of the entire record we are clearly of opinion that, even assuming that there was not an actual and continued change of possession of the property, the question whether plaintiff had satisfactorily rebutted the presumption of fraud arising from that fact was, upon the evidence, one of fact for the trial court, and that his finding cannot be disturbed. In discussing this branch of the case, counsel for the assignee lay much stress upon the evidence tending to show that the sale was intended to secure a preference over other creditors to the Twenty-Third Ward Bank of New York, of which plaintiff was president. The evidence to that effect was quite persuasive. But, as already suggested, that point was not in the case, and the evidence referred to had no legitimate tendency to prove the second point, viz., that the sale was made with intent to hinder, delay, or defraud creditors. There is a point in the *Pillsbury Case* which is not in the other. Some two or three weeks after the sale already considered, it was found that an error had been made in computing the quantity of property sold. Cottrell had then on hand in his warehouse between 13,000 and 15,000 Brazilian barrels, and, to make good the shortage referred to, he executed to plaintiff a bill of sale of 12,384 of these barrels, but no specific barrels out of the entire lot were ever set apart or designated as those covered by this supplemental bill of sale. Cottrell sold all the barrels indiscriminately to the Pillsburys in the usual course of business in his own name. When Cottrell made the assignment to appellant there was still due from the Pillsburys somewhat more than enough to pay for the 12,384 barrels covered by the bill of sale. Plaintiff brought suit against the Pillsburys to recover the amount which he claimed he was entitled to. Thereupon the appellant intervened, claiming that he, as assignee, was entitled to the money. The point is made that, as no specific barrels were ever set apart out of the whole lot and

appropriated to this bill of sale, therefore the title to none of the barrels ever passed from Cottrell to plaintiff. We understand the fact to be that all the barrels were of exactly the same kind and value.

The evidence was sufficient to warrant the conclusion that the intention of the parties was that the title to the barrels should presently pass by the bill of sale, and that thereafter plaintiff should be the owner of 12,384 barrels out of the whole lot, and that they should be under the exclusive control of Kern, plaintiff's agent, who had the right and power at any time to make the separation, and take that number of barrels out of the lot. While there is some confusion and conflict among the authorities on the subject, yet it is settled in this state that where a certain number of articles are sold out of a greater number of exactly the same kind and quality, with the intention that the title should presently pass, and where the vendee has the absolute right at any time to take the amount or number out of the whole mass or quantity, this is sufficient to pass the title, although the specific articles are not actually designated or separated from the remainder. Under such circumstances, until the separation is made, the vendor and vendee are tenants in common of the whole according to their respective interests. *Nash* v. *Brewster,* 39 Minn. 530, (41 N. W. Rep. 105;) Benj. Sales, ch. 4, and American note. The evidence was sufficient to justify the finding that plaintiff was the owner of these barrels. If, under the particular facts of this case, there was any objection to plaintiff's suing the Pillsburys alone for the amount to which he was entitled, it was obviated by the intervention of the appellant as assignee, for thereafter all the parties interested in the whole sum due from the Pillsburys were before the court, which could award to each the amount to which he was entitled.

Order affirmed.

DICKINSON, J., absent, took no part.

(Opinion published 51 N. W. Rep. 222.)
v.48m.—26