GEORGE L. MATCHAN v. PHOENIX LAND INVESTMENT
COMPANY AND OTHERS.
FRED KREOFSKY, INTERVENER.[1]

April 17, 1924.

No. 23,792.

**Conveyance fraudulent as to creditors.**

1. Findings considered and *held* to be a determination that a conveyance of real estate was fraudulent in fact, and so intended, as against the creditors of the grantor.

**When courts will disregard acts of corporation organized to perpetrate fraud.**

2. Where a corporation has been organized for that purpose and used as an instrument of fraud; where an individual has incorporated himself in order to hinder, and, if possible, to defraud creditors, courts, in order to accomplish justice, will go as far as necessary in disregarding the corporation and its doings.

**Rights of fraudulent company no greater than those of person engaged in fraud.**

3. In such a case the difference in legal personality between the individual involved and the corporation gives the latter no greater rights than the former. The corporation cannot be party to a fraud engineered by the individual and set up a title of which he will have substantially the whole advantage and thereby defeat an adjudication that otherwise would undo the fraud.

**Innocence of stockholders will not protect the corporation.**

4. The innocence of some of its stockholders does not help the corporation where property has been conveyed to it in fraud of creditors of the grantor. In such a case the corporation is a party to the fraud and cannot relieve itself of that guilt or its consequence simply because some of its stockholders are innocent.

Action in the district court for Hennepin county, by the receiver of the First National Holding Company, to set aside certain con-

[1]Reported in 198 N. W. 417.

veyances, to find the Holding Company the owner of the real estate described, and for an accounting for all rents and profits arising therefrom. Fred Kreofsky was allowed to file his complaint in intervention, claiming among other things that he was entitled to an equitable lien or mortgage upon the property superior to any other except those of the mortgagees. The case was tried before Waite, J., who when plaintiff rested denied motions of the Phoenix Company to dismiss as against the receiver and the intervener, made findings canceling the satisfaction of intervener's judgment upon his deposit with the clerk of court, within five days, of the $1,000 received by him and allowing intervener to share pro rata with other creditors of the Holding Company, decreeing that the Jordan mortgage was paid and that the Phoenix Company held the land in trust for plaintiff subject to the Andrus mortgages, and ordered judgment in accordance therewith. Certain amendments were allowed either by consent or by the court upon its own motion. From an order denying its motion for a new trial, defendant Phoenix Land Investment Company appealed. Affirmed.

*James E. O'Brien* and *Ludwig O. Solem*, for appellant.

*Wright & Wright* and *George L. Matchan*, for plaintiff.

*S. R. Child, H. E. Fryberger* and *Donald E. Bridgman*, for respondents.

STONE, J.

Action to set aside certain conveyances and to have the real estate in question declared the property of First National Holding Company. After trial by the court and a decision adverse to defendant Phoenix Land Investment Company, it made a motion for a new trial, from the denial of which it appeals.

Extended consideration of the facts is unnecessary, but the record is so lengthy and involved that a mere effort to bring out its high lights may seem like extended statement, although the fact will be to the contrary.

The property consists of two lots in Minneapolis upon which are situated the Summit and Bryant Apartments. The litigation arises from the activities of defendant R. R. Betcher. (He, with the other

members of his family herein referred to, were made parties defendant, but defaulted. That default, however, is nominal only. The Betcher interests have been well protected by the vigorous defense of the Phoenix Company). The title was originally taken by him but placed in the name of one Blomquist, the purchase price being procured through a $12,000 mortgage negotiated in the name of Blomquist. This occurred in 1912. Betcher then negotiated two mortgages on the property, each for $30,000. Out of the funds so obtained, the $12,000 mortgage was paid, and the erection of the apartment buildings put under way.

In October, 1912, through the procurement of Betcher, Blomquist and his wife conveyed the property to the Minneapolis Holding Company. This conveyance was without consideration moving either from Betcher or the grantee.

In September, 1914, the property was sold at execution sale, but it was refinanced by Betcher and the title placed in the First National Holding Company, the receiver of which is the plaintiff and respondent herein. All of this was subject to the two $30,000 mortgages negotiated in 1912. They were foreclosed and the property sold at the resulting sale in 1915. But in February, 1916, there was a redemption by the First National Holding Company. Betcher had been successful in another refundment of his debts so far as they were secured on this real estate. New mortgages were negotiated which remain liens on the property.

Both the Minneapolis Holding Company and the First National Holding Company were corporations; each of them, according to the findings, "for the purposes of equity" identical with Betcher. That identity the trial judge aptly characterizes as "the clue to the labyrinth of this case."

Otherwise than by executing the notes secured by the mortgages in question, "Blomquist never paid any consideration for, nor made any investment in said property, and * * * acted merely as the agent and cover of defendant R. R. Betcher."

The two corporations, already referred to as his instruments, not being sufficient for his purposes, Betcher organized a third, defendant Phoenix Land Investment Company, and in July, 1916, caused

the First National Holding Company to convey the property through a "dummy" to the Phoenix Company. There was no consideration for that conveyance. The First National Holding Company got nothing for it. It was really the sole act of R. R. Betcher.

During all the times in question, Betcher and all his corporations have been insolvent, and when the property was conveyed to the Phoenix Company, there were certain creditors whose claims he had to adjust. He agreed with them that, upon the organization of the Phoenix Company, some of its stock should be issued in liquidation of their claims. Accordingly, stock was issued to those creditors as follows: To Louise M. Blomquist, acting for her husband, the original Blomquist, 150 shares; to E. G. Chapman, 20 shares; to N. C. Bennett, 90 shares; to Gamble & Ludwig, 16 shares. All the rest of the stock was issued to and for the benefit of Betcher; the four blocks just specially mentioned being intended to represent the claims of the named stockholders as creditors of Betcher.

At the time of the conveyance to the Phoenix Company, the property was worth much more than the encumbrances against it.

The relief granted plaintiff by the decision under review was a restoration to the possession and control of the property, and the enjoyment of the income therefrom, and an adjudication that the legal title be held by defendant as a trustee for plaintiff and the creditors of the First National Holding Company, the Minneapolis Holding Company, and defendant R. R. Betcher, arising out of the indebtedness existing on December 29, 1916, at about which time the property had been conveyed to the Phoenix Company.

At this point it is well to introduce the intervener, Kreofsky. In December, 1921, for cash advances made to them in 1915, or before, he recovered judgment against Betcher and the First National Holding Company for upwards of $41,000. No part of that judgment has been paid. Under it and in July, 1920, a levy was made upon the property in question.

On February 27, 1923, while this action was on trial, there appeared a satisfaction of this judgment and a release of the levy made under it, both of which were annulled by the decision below because of the fraud and undue influence of Betcher and the in-

competence, at the time being, of the intervener. Either ground is sufficient to sustain the result and on this record we are not justified in disturbing it.

The intervener received not more than $1,000 for the discharge of his $41,000 judgment. It was procured from him through the activities of one Harman, under circumstances so insufficiently proven and so insufficiently explained as well to justify the conclusion of fraud. Intervener sought to have the property subjected to his claim upon an "equitable mortgage" theory which it is not necessary to explain because that relief was denied him. But he was reinstated as a judgment creditor of Betcher and the First National Holding Company. That relief was granted upon certain terms which do not require discussion. Apparently, they have been, or will be, complied with and, if they are, under the decision below, the intervener will be let in with other creditors to share in the distribution of the assets available for the payment of the general creditors of the First National Holding Company. The named stock holders, creditors of Betcher, who accepted, in liquidation of their claims against him, stock in the Phoenix Company, were protected, in his usual careful manner, by the learned trial judge. His decision was stated to have no effect as a determination of their rights, as creditors of the First National Holding Company. In other respects also, jurisdiction was reserved so that ancillary issues can be determined as they arise, to the end that in this one suit, equitable jurisdiction may be adequate to the task of deciding all of the issues and fairly determining the rights of all parties at interest.

These findings for plaintiff and intervener are opposed, for the Phoenix Company, by the simple claim that it owns the property free from any claim of plaintiff or intervener.

That is the story of the case, sufficiently stated for present purposes.

Our brief resume will not meet with appellant's approval. Most of its evidence and all its arguments are strongly the other way at controlling points. The view we take is necessarily that adopted by the learned trial judge, for our review of the record discloses noth-

ing justifying a disturbance of the findings and the resulting conclusions of law.

The defense on behalf of the Phoenix Company is predicated upon the alleged good faith of the conveyance of the property to it and upon the assumption that there is no finding to the contrary. In other words, the argument is that, although that conveyance amounted to a preference of the creditors of Betcher and the First National Holding Company, who participated in the distribution of the Phoenix Company's stock, it was an honest preference and not now to be set aside in the absence of a finding that it was fraudulent. In support of that argument appellant invokes the rule of such cases as Bannon v. Bowler, 34 Minn. 416, 26 N. W. 237; MacKellar v. Pillsbury, 48 Minn. 396, 51 N. W. 222; and Dyson v. St. Paul Nat. Bank, 74 Minn. 439, 77 N. W. 236, 73 Am. St. 358.

Interpreting the findings in the light of the evidence and taking them altogether, as we must, we understand that the conveyance from the First National Holding Company to the Phoenix Company has been found fraudulent in fact, and so intended. After finding that, at the time of that conveyance, there was a substantial value in the property in excess of the admitted encumbrances, the findings proceed to the effect that, as to the Minneapolis and First National Holding companies, each was the "agent, instrument and corporate personification" of R. R. Betcher; that they were insolvent and indebted to creditors whose claims aggregated a large sum of money; that the "said creditors in no wise procured or consented to said conveyance," and as to each and all of said creditors, "said conveyance was an unlawful preference, the *purpose* and effect whereof was to hinder, delay and defraud those creditors of said Betcher who were not included" in the distribution of the stock of the Phoenix Company.

After such a finding, it would be surplusage further to characterize the transaction as grossly and intentionally fraudulent.

Mr. and Mrs. Blomquist were held, and very properly, to have had knowledge of the purpose of the conveyance to the Phoenix Company, and its antecedents, so that, even if they were parties to

this action, they could not successfully defend against it. Mr. Chapman, Mr. Bennett and Gamble and Ludwig are therefore the only stockholders in the Phoenix Company who can be considered as having any claim to the benefit of an innocent participation in the organization of the Phoenix Company. They are not parties to this action. If they were, their personal innocence would not help them in the least, because they would appear only as stockholders of the Phoenix Company and would have to claim under and through it, and its title is clearly defective in that it paid no consideration for the property, and was used as a mere tool for the personal and fraudulent purposes of defendant Betcher. Considered as an entity apart from him, it was a guilty participant in the fraud perpetrated upon the majority of the creditors of Betcher and the First National Holding Company.

It is not expressly so found, but the findings read as a whole clearly indicate that most of the transactions with this property, since the title was taken from the Minneapolis Holding Company, have been tinged with the fixed purpose of defendant Betcher to defraud his creditors so far as circumstances required and would permit. Under the facts as found, appellant is in no position to detach itself from the effects of Betcher's fraudulent purposes, and his various maneuvers with this title calculated to effectuate them.

Where a corporation has been organized and used as an instrument of fraud; where, as here, an individual has incorporated himself in order to hinder and, if possible, defraud creditors, courts will go as far as necessary in disregarding the corporation and its doing in order to accomplish justice. Such a corporation is a mere parasitic growth, a mass of fungus, which will be lopped off clean whenever necessary to sound results. Linn & Lane Timber Co. v. U. S. 236 U. S. 574, 35 Sup. Ct. 440, 59 L. ed. 725.

The reasoning of that case fits here exactly. "The difference in legal personality" between Betcher and the corporation gives the latter no greater rights than the former. The corporation cannot be party to a fraud engineered by Betcher, and, on the ground of its success, set up a title of which Betcher is to have substantially

the whole advantage, "and thus defeat the adjudication  *  *  *
that otherwise would undo the fraud."

Where such a thing is attempted, "courts of law, equity, or
bankruptcy, do not hesitate to tear aside the veil of corporate
entity" and ascertain "the actual and substantial beneficiaries".
Fletcher, Corporations, § 44. See also 14 C. J. 61; MacFadden v.
Jenkins, 40 N. Dak. 422, 169 N. W. 151.

The fraudulent organizer of a corporation, intending to conceal his
property from his creditors, cannot disinfect and immunize his work
by admitting to its expected benefits one or more favored ones
among his creditors. The corporation does not rid itself of guilt
and its results simply by admitting one or more innocent stock-
holders. That would indeed be an easy and convenient method of
perpetrating fraud. It is not permissible on any ground. Wrong-
doers cannot escape justice simply because their associates are not
all bad.

With respect to the complaint that the action below amounts
to an allowance of the intervener's claim in the receivership of the
First National Holding Company, there is only this to say. The
relief thus granted intervener was the least that could be given
him under the facts as they are now found to be. It amounts to his
being reinstated as a judgment creditor of the First National Hold-
ing Company and Betcher.

Appellant's only concern is that no more creditors be admitted to
participate in the benefit of the property than are entitled to such
participation. It is now adjudged that intervener is entitled, as a
creditor, to his proper interest in the equity. That much the deci-
sion below settles finally as against appellant and plaintiff. The
district court has a wide discretion with respect to the filing of
claims after the expiration of the time limited for that purpose.
Spooner v. Bay of St. Louis Syndicate, 48 Minn. 313, 51 N. W. 377;
Straw & Elsworth Mnfg. Co. v. Kilbourne Boot & Shoe Co. 92 Minn.
399, 100 N. W. 100. Their filing may be permitted on motion. It
is difficult to see why the same result should be objectionable where
the claimant's rights are adjudicated in an action to which the
receiver is a party. This is such a case. It would be supereroga-

tion now to compel the intervener to make a motion in the receivership proceedings asking the district court to give effect to its own judgment in this case. At most, it would be a pro forma matter.

While not all of them have been mentioned, none of the assignments of error, nor any of the arguments in their support have been overlooked.

We find no reason for a reversal or modification of the order appealed from. In consequence it is affirmed.

Affirmed.