Edward R. KENNEALLY, Trustee in Bankruptcy of General Magnetics, Inc., a Corporation, Bankrupt, Appellant,

v.

STANDARD ELECTRONICS CORPORA-TION and First National Bank of Minneapolis, Appellees.

No. 18090.

United States Court of Appeals Eighth Circuit.

Aug. 17, 1966.

Rehearing Denied Sept. 28, 1966.

M. L. Culhane, of Culhane & Culhane, Minneapolis, Minn., for appellant and James E. Culhane, of Culhane & Culhane, Minneapolis, Minn., was with him on the brief.

Robert O. Flotten, of Dorsey, Owen, Marquart, Windhorst & West, Minneapolis, Minn., for appellee, First Nat. Bank of Minneapolis and filed brief.

Joseph Mast, St. Paul, Minn., for appellee, Standard Electronics Corp. and Lawrence Perlman, of Wheeler & Fredrikson, Minneapolis, Minn., was with him on the brief.

Before VAN OOSTERHOUT and MEHAFFY, Circuit Judges, and HARPER, District Judge.

MEHAFFY, Circuit Judge.

General Magnetics, Inc., a Minnesota corporation (hereafter Bankrupt), filed a voluntary petition in bankruptcy on June 25, 1962. Adjudication followed and the Trustee was elected on July 6, 1962. Certain of Bankrupt's property was sold at public auction free and clear of alleged liens. The property included Bankrupt's machinery and equipment and sold for $53,741.09. It was provided that the alleged liens be transferred and attached to the sum realized from the sale leaving validity and priority of the liens for later determination.

Upon petition to the District Court for review of the order of the referee, the District Court remanded the case and ordered the findings of fact and conclusions of law be numbered. An appeal to this court was premature and we dismissed the same for lack of jurisdiction. Standard Electronics Corp. v. Kenneally, 336 F.2d 394 (8th Cir.1964). Subsequently, the District Court ordered a full transcript of the proceedings to be certified and the referee reconsidered the matter and filed numbered findings of fact and conclusions of law.

The referee's findings of fact and conclusions of law upheld the validity and enforceability of some of the liens of First National Bank of Minneapolis (hereafter Bank) and Standard Electronics Corporation (hereafter Standard). Jurisdiction was retained to trace the specific property subject to the liens into the proceeds of the auction sale. The District Court approved and affirmed the referee's findings and conclusions and the Trustee brings this appeal from the District Court's order. We affirm.

*The Bank's Claim.*

The Bank's claim was based upon a chattel mortgage dated November 28, 1961, covering certain office and shop

equipment and reciting a consideration of $33,839.39. It also contained a "dragnet" clause purporting to secure all additional amounts hereafter advanced or loaned and all other indebtedness due or to become due from the mortgagor.[1] The Bank's claims under the mortgage totaled $21,817.67, comprising $13,816.86 balance due on the note dated November 28, 1961; $3,107.34 for additional amounts subsequently loaned Bankrupt to cover overdrafts; and $4,893.47 for services rendered as the Bankrupt's stock transfer agent.

The Trustee attacks the validity of the mortgage on numerous grounds. First, he maintains that the property descriptions without available serial numbers were insufficient. Some of the items were described by serial number and others by brand names, model names, trademarks, etc. As indicated in the mortgage, this property was located at Bankrupt's place of business. The property was used in the ordinary course of Bankrupt's business and was not offered for sale to the general public.

Trustee argues that the case of McDonald Mfg. Co. v. Read, 210 Minn. 232, 297 N.W. 739 (1941), establishes the necessity for the property description to contain the respective serial numbers in order for the mortgage to be valid. In *McDonald* the Minnesota court held that in a mortgage on an oil furnace, which was part of a retail stock offered for sale to the unsuspecting public, the identifying serial number was "an essential part of its description if instruments affecting title, recorded, are to be depended upon as constructive notice." The referee and the District Court correctly concluded that the *McDonald* case is inapposite and sustained the validity of the property description based on the factual descriptions and the long standing

Minnesota rule that a description in a chattel mortgage is sufficient if it will enable a third person, aided by inquiries which the instrument itself suggests, to identify the property. Tragar v. Jackson, 230 Minn. 544, 42 N.W.2d 16 (1950); Munson v. Bensel, 169 Minn. 434, 211 N.W. 838 (1927); Tolbert v. Horton, 33 Minn. 104, 22 N.W. 126 (1885). See also and compare Tobin v. Kampe, 132 F.2d 64, 145 A.L.R. 366 (8th Cir.1942).

The items of property did not constitute part of a stock for retail sale. It was in possession of the mortgagor at the address listed in the mortgage. For the most part, the property not specified by serial numbers was described by brand names, model numbers, nature of the machine, and most was specialized engineering equipment and machinery. It was highly unlikely that other such machinery would be found in the same building. A third person could, given the information in the mortgage, identify the property without difficulty. We sustain the District Court's holding that the general rule of Minnesota governs and the description was legally sufficient.

The Trustee also contends that certain items of the mortgaged property were so affixed to the building as to become fixtures, thus requiring a realty mortgage which was not executed. Some of the items involved were indeed attached to the leased building by bolts, duct work, conduits for electrical wiring systems, etc. Some damage resulted from the removal of the machinery after the sale. For example, one of the machines was resting on a thick concrete slab. Upon removal of the machine, the concrete was broken up, necessitating the broken pieces to be carried away. The Bankrupt had installed special wiring systems for operation of some of the machinery. The

---

1. The dragnet clause reads:
   " * * * any other note or notes given hereafter in renewal thereof, and all additional amounts heretofore or hereafter advanced or loaned by the Mortgagee to the Mortgagor, and all other notes of the Mortgagor heretofore or hereafter given to or purchased or otherwise acquired by the Mortgagee and all other indebtedness and liabilities due or to become due, direct or indirect, absolute or contingent, now existing or hereafter arising and/or at any time owed or contracted by the Mortgagor to the Mortgagee."

building was constructed of concrete blocks. Apparently, the most important affixation of this machinery to the building was the wiring conduits for ovens. The removal of this required taking out and replacing of one or two of the concrete blocks. Although the landlord was concerned about the damage to the building by removal of some of these items and claimed them as fixtures, he was more concerned with repair of the damage caused by removal. He was paid for damage resulting from moving the machinery. This apparently satisfied the landlord.

■ The mortgage was executed some time after the machinery was installed and both the mortgagor and mortgagee considered the property personalty. It does not appear that the items were attached to the realty with a sufficient degree of permanence that the attachment alone would change the character of the property from personalty to realty. It has long been settled by the law of Minnesota that to constitute a fixture, in addition to the physical attachment, many other factors must be taken into consideration, such as intent of the parties in making the annexation, the nature of the thing annexed, the adaptability to the use of the land and the end sought by annexation. Wolford v. Baxter, 33 Minn. 12, 21 N.W. 744 (1884). The manner of the annexation usually is not decisive but only one of several factors to be taken into account in determining whether the article loses its character as personalty and becomes a part of the realty. Hanson v. Vose, 144 Minn. 264, 175 N.W. 113, 7 A.L.R. 1573 (1919). Furthermore, the property was used by Bankrupt in its business, and Minnesota is committed to the "trade fixtures" rule which permits trade fixtures to be removed no matter how permanently attached, so long as such removal does not result in material and permanent injury to the freehold. Moffat v. White, 203 Minn. 47, 279 N.W. 732 (1938) (gasoline pumps, storage tanks, electric motors, etc. on gasoline station premises held not to be realty); North-

western Lumber & Wrecking Co. v. Parker, 125 Minn. 107, 145 N.W. 964 (1914) (boiler set upon permanent foundation, smoke pipe through building wall connecting boiler to smoke stack outside, engine bolted to engine bed supported by braces on another floor, steam heat—radiator heating system on two floors connected to boiler with usual plumbing apparatus in building, held not to be fixtures under the trade fixtures doctrine). See also Bee Bldg. Co. v. Daniel, 57 F.2d 59 (8th Cir.1932) (metal cages, marble railings, office partitions, steel vault doors, steel safe deposit boxes, mahogany booths, all electric fixtures, exhaust ventilating fans, wooden cabinets in savings and loan office, held not to be realty under trade fixtures doctrine); 4 Collier, Bankruptcy (14th Ed.) ¶ 70.20, p. 1157. There is no record evidence of any material and permanent injury to the freehold. Under the Minnesota rule, the referee and the District Court were fully justified in determining that the mortgaged property remained personalty. Our conclusion here precludes occasion to discuss other arguments advanced by Trustee on this issue.

■ Trustee challenges the District Court's allowance of advances made to Bankrupt by Bank under the "dragnet" clause of the Bank's mortgage. Such allowance affected the priority of the Bank's lien as, subsequent to the Bank's mortgage, Bankrupt mortgaged the same property to Standard. Prior to execution of Standard's mortgage, an official of Bankrupt obtained from the Bank copies of the Bank's mortgage and informed the Bank of the possibility and likelihood of a second mortgage. Trustee does not question the validity of a properly drawn mortgage on after-acquired property or that the law of the state would be controlling. Indeed, the state law is controlling. See 4 Collier, Bankruptcy (14th Ed.) ¶ 70.82(3). The Minnesota court has long upheld the validity of "dragnet" provisions. Berry v. O'Connor, 33 Minn. 29, 21 N.W. 840 (1884).

Trustee suggests that since the question here involves interpretation of documentary evidence, this court is in as good a position as is the District Court to pass on it. Even so, we do not find this particular clause ambiguous as it specifically purports to cover all additional amounts advanced or loaned. This plain language needs no interpretation as it simply means what it plainly states. Standard Title Ins. Co. v. United Pacific Ins. Co., 364 F.2d 287 (8th Cir. Aug. 15, 1966).

The crucial issue is whether the Bank had actual knowledge of Standard's second mortgage prior to making some advances. As pointed out by the District Court, record evidence indicates that " * * * only * * * with further inquiry the Bank may have become aware that a second mortgage was contemplated or intended * * * " and that "the Bank never had any actual notice that a second mortgage had in fact been executed." The Minnesota court has specifically ruled that "[a] subsequent mortgagee can limit the credit that may be given under a mortgage to secure future advances only by giving the holder actual notice of his lien." Anderson v. Liston, 69 Minn. 82, 72 N.W. 52 (1897). The Bank readily conceded that if advances were voluntary and with actual knowledge of an intervening lien, they would not be entitled to priority, but the evidence fully justified the finding that there was no actual knowledge of an existing second mortgage, only knowledge that a second mortgage was contemplated. Both the referee and the District Court followed the Minnesota rule announced in *Anderson,* supra, where the Minnesota court recognized some contrary authorities, but adopted its rule, characterized as being "the better rule and the one sustained by the great weight of authority." 72 N.W. at 53. Our opinion is that the "dragnet" clause was unambiguous and since no actual notice of the subsequent mortgage was giv-

en, the referee and the District Court committed no error but properly followed the applicable Minnesota law.

The Trustee asserts that the District Court committed error in sustaining the referee's decision denying Trustee's motion to dismiss for the Bank and Standard's failure to sustain their burden of proof of tracing the specific property covered by the mortgage into the proceeds of the auction sale. The referee retained jurisdiction for the purpose of tracing. Of course, both claimants had the obligation to trace. In our opinion, the referee did not exceed his power by retaining jurisdiction for this purpose. The bankruptcy court is essentially a court of equity. Its equitable powers are to be exercised with respect to claims and substance will not give way to form and technical considerations will not prevent substantial justice from being done. United States v. Duggan, 210 F.2d 926, 933 (8th Cir.1954). It does not appear that the District Court's ruling on this issue operated to the prejudice of the Trustee or any interested party. The claimants still have a duty to trace, and the bankruptcy court had the authority to retain jurisdiction for this limited purpose.

*Standard's Claim.*

Involved here is the correctness of the District Court's affirmance of the referee's allowance of Standard's secured claim of $25,000.00.[2] On January 22, 1962, Bankrupt executed a mortgage to Standard, pledging the same property covered in the earlier chattel mortgage to the Bank. The recited consideration in Standard's mortgage was $25,000.00, although the advance made by Standard to the Bankrupt at the time of the execution of the mortgage was only $5,000.-00. The Trustee raised identical issues as to the validity of the Standard mortgage and the sufficiency of the property description as contained therein as we have heretofore considered in disposing of the Bank's secured claim. Our views

2. Standard filed its proof of claim as a secured creditor in the amount of $47,850.-00, but we are only concerned with the allowance of the $25,000.00 under the January 22, 1962 mortgage.

expressed above are dispositive of the same issues relating to Standard.

We, therefore, proceed to discuss two separate issues applying only to Standard's secured claim. As with the Bank's claim, the referee also reserved for consideration the question of tracing of Standard's lien under the secured claim to the proceeds of the auction sale.

Trustee first contends that the court erred in allowing the claim to the extent of $25,000.00 when in fact only $5,000.00 had been advanced at the time of execution of the mortgage. The mortgage instrument contained no reference to future advances. Over objections of the Trustee, the referee admitted evidence that $20,000.00 was advanced to Bankrupt subsequent to the date of recordation of the mortgage to Standard. The referee ruled and the District Court affirmed that despite the fact that the mortgage purported to secure a larger debt than actually existed at the time of execution, the mortgage could secure additional advances subsequently made and further that parol evidence establishing the subsequent advances was relevant and admissible.

It appears to be the rule in Minnesota that the validity of a mortgage executed in good faith and for valuable consideration is not affected by the fact that it is given as security for a larger sum than is actually due. Nazro v. Ware, 38 Minn. 443, 38 N.W. 359, 361 (1888). See also Berry v. O'Connor, supra. The cited cases are old, but Trustee makes no attempt to discredit them. Neither is there any indication that the doctrine there announced would not now be followed in Minnesota. Standard has cited other cases lending some support to its position, but we do not find them precisely in point.[3] Trustee has cited only one case in support of his position, that being In Re American Metal Products Co., 276 F.2d 701 (2nd Cir.1960). This case is not controlling as it is based on a Connecticut statute that has no Minnesota counterpart and the Connecticut statute has since been repealed. We note also that in Nazro, supra, the Minnesota court refused to follow the Connecticut doctrine.

In his reply brief, Trustee suggests that the issue is one of admissibility of evidence of the subsequent advances. Nazro, supra, and Harrington v. Samples, 36 Minn. 200, 30 N.W. 671 (1886), condoned the admissibility of parol evidence to show the real consideration for a mortgage.

Finally, the Trustee submits that the District Court erred in failing to subordinate the claim of Standard. It is argued that the court failed to apply the test of fairness and equity and in not considering the harm and prejudice to other creditors. A recitation of the background leading up to the claim involved is in order.

The Bankrupt never operated at a profit after its incorporation in 1959. It was in serious financial difficulties by December of 1961 and its condition was bruited about the area. Standard initiated talks with Bankrupt relative to a possible merger. On January 5 and 6, 1962, the companies discussed a proposed exchange of stock to result in Standard's owning a majority of Bankrupt's stock. A potential merger was discussed and Standard agreed to advance money to the Bankrupt to be used to meet operating expenses, the loan to be represented by promissory notes secured by chattel mortgage on Bankrupt's equipment subject to the existing mortgage on some equipment held by the Bank. At the January 5 and 6, 1962, meetings, a majority of the boards of directors of both companies were present. There is evidence to the effect that there was no objection from Bankrupt's officers to securing advances by Standard. On January 10, 1962, the

3. Tobin v. Kampe, 132 F.2d 64, 145 A.L.R. 366 (8th Cir. 1942); Midland National Bank of Minneapolis v. Hendrickson, 165 Minn. 446, 206 N.W. 723 (1926); Lee v. Fletcher, 46 Minn. 49, 48 N.W. 456, 12 L.R.A. 171 (1891); Harrington v. Samples, 36 Minn. 200, 30 N.W. 671 (1886); Manor v. Sheehan, 30 Minn. 419, 15 N.W. 687 (1883).

companies exchanged stock and subsequent thereto a majority of Bankrupt's board were also board members of Standard. The first record evidence of Standard's directors' exercising their voting majority to control the affairs of Bankrupt was on March 16, 1962 when a new management was installed for Bankrupt. On January 22, 1962, the mortgage reciting the consideration of $25,000.00 was executed by the Bankrupt and recorded on January 23, 1962. This mortgage was executed while Standard controlled Bankrupt's board, but before Standard exercised its majority powers. The full amount of the $25,000.00 advance had been made prior to Standard's exercising its control over the Bankrupt.

Both the referee and the District Court found that Standard's transactions with the Bankrupt did not have that element of fraud or unfairness so essential to a decision to subordinate. There is no record evidence that Standard took any unfair advantage of its ability to dominate Bankrupt or in any manner forced Bankrupt to give security for Standard's advances. Neither is there any showing that the responsible officers of Bankrupt objected in any way to the security advances. Contrarily, there is strong evidence that the money advanced by Standard was sorely needed by Bankrupt for its use for proper corporate purposes. Neither is there any showing that Standard attempted to conceal any of the transactions from either Bankrupt's officers or creditors of Bankrupt.[4]

Under this state of the record evidence, the District Court relied upon our opinion in Barlow v. Budge, 127 F.2d 440, 444 (8th Cir.1942):

"But, while the dealings of an officer, director or stockholder who files a claim against a bankrupt corporation for money loaned to it will be subjected to rigorous scrutiny and the claimant required to prove the good faith of the transaction upon which the claim is based and also its fairness from the point of view of the corporation and those interested in it (citing cases), his relation to the bankrupt will not prevent the allowance of his claim on a parity with other creditors if he can show that the money was needed by the corporation and was used for proper corporate purposes and that the transaction between him and the corporation was open, honest and free from unfairness or fault.

"We think that the duty and responsibility of determining whether, under the applicable law, the claim of Budge was upon an equitable parity with the claims of other creditors was primarily that of the bankruptcy court, which was charged with the administration of this insolvent estate, and that this Court would not be justified in setting aside the order appealed from unless convinced that it was clearly erroneous. We are not convinced that it was clearly erroneous."

See also Spach v. Bryant, 309 F.2d 886 (5th Cir.1962).

Trustee maintains that Standard's advances were in fact capital contributions but this argument is completely refuted by evidence that the advances were used to meet everyday needs of the Bankrupt for making payrolls and other operating expenses in order to keep the business going pending study of the merger. There is no evidence of Standard's making advances to Bankrupt to avoid an increase in the capital or that there was any fraud or overreaching. We are of the opinion that the District Court properly determined this issue.

We have carefully considered other arguments advanced by Trustee but find them without merit. The findings of fact forming the basis for the District Court's opinion are supported by substantial evidence and in the main the law of Minnesota controls the legal issues. The District Court has reached proper conclusions and its order is

Affirmed.

---

4. There is evidence that some of Bankrupt's corporate records and books were missing, but no indication that this operated to the detriment of any interested party.