In the Matter of RISS TANNING COR-
PORATION, Bankrupt.

**STATE BANK OF ALBANY, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

No. 62, Docket 72–1448.

United States Court of Appeals,
Second Circuit.

Argued Sept. 25, 1972.

Decided Oct. 27, 1972.

Stephen Reynolds, Albany, N. Y.
(McNamee, Lochner, Titus & Williams,
Albany, N. Y., on the brief), for appel-
lant.

Robert Stephens Watkins, Annapolis,
Md. (Scott P. Crampton, Asst. Atty.
Gen., Meyer Rothwacks, Gary R. Allen,
Tax Division, Department of Justice,
Washington, D. C., on the brief), for ap-
pellee.

Before HAYS, OAKES and TIM-
BERS, Circuit Judges.

HAYS, Circuit Judge:

State Bank of Albany appeals from an
order of the United States District
Court for the Northern District of New
York which denied and dismissed its pe-
tition to review a decision by the Ref-
eree in Bankruptcy and affirmed that
decision. We reverse.

The facts have been stipulated by the
parties and we summarize them as fol-
lows:

On December 4, 1964, Riss Tanning
Corporation, the bankrupt herein, exe-
cuted a bond and real estate mortgage in
the principal amount of $50,000 payable
to appellant State Bank of Albany. On
the same date, the corporation executed
a note payable to appellant in the
amount of $25,000. As collateral for the
note the corporation executed a chattel
mortgage covering specific items of its
equipment. Both the bond and the note

called for regular monthly payments. The real property mortgage was recorded on December 4, 1964 and the financing statement for the chattel mortgage was filed on December 7, 1964. The $25,000 note and the chattel mortgage which secured it included the provision which is at the center of this dispute. The so-called "dragnet clause" in the security agreement stated that the listed equipment was

> "security for the payment of this note or any note given in extension or renewal thereof *as well as* for the payment of any other obligation direct or contingent of [Riss Tanning] to the Bank due or to become due *whether now existing* or hereafter arising . . . ." (emphasis added)

On March 1, 1968, Riss Tanning filed a voluntary petition in bankruptcy. At that time there was $47,250 due on the bond and $10,904.68 due on the note. State Bank foreclosed on the real property mortgage and that action resulted in a deficiency of $5,137.52. Thereafter, in the administration of the bankrupt's estate, the Referee ordered that all of the personal property of the bankrupt be divided into certain categories, sold at auction, and the proceeds distributed to those secured creditors found entitled to them. The equipment designated as security for the note held by appellant was sold and the proceeds were applied to the amount which bankrupt owed appellant on the note. After deduction of the amount conceded to be due appellant and the payment of certain fees and expenses, a surplus of $6,201.26 remained from the sale.

Appellant State Bank claims that this surplus should be applied to the deficiency on the real property mortgage in accordance with the terms of the clause quoted above. The Government argues that the chattel mortgage did not secure the $50,000 loan which was, they claim, secured only by the real property mortgage and therefore it is not security for the debt arising from a deficiency judgment after foreclosure of that mortgage.

The Government contends that the United States is entitled to the surplus in partial payment of "its tax liens for unpaid withholding, F.I.C.A. and F.U.T.A. taxes" owed by Riss Tanning, which were duly filed on various dates between May 15, 1967 and June 20, 1968.

The Referee in Bankruptcy, in an order, confirmed by the district court, sustained the Government's position and held that the surplus should be paid to the United States in partial satisfaction of its priority claim for taxes.

The issue we are called upon to decide is whether appellant is entitled to a priority over the Government's tax liens by reason of the "dragnet" clause in its duly filed security agreement with bankrupt.

■ The character of the bankrupt's debts for the purpose of determining priorities involving these tax liens is to be decided according to state law, in this case the law of New York. Aquilino v. United States, 363 U.S. 509, 512–513, 80 S.Ct. 1277, 4 L.Ed.2d 1365 (1960). As the Government concedes if, under New York law, a choate security interest in specific property of the taxpayer was perfected prior to the filing of the federal tax liens, such an interest is entitled to priority over the tax liens. See Internal Revenue Code of 1954 (as amended by the Federal Tax Lien Act of 1966), § 6323. The Government also concedes that the Bank perfected its security interest in the taxpayer's equipment prior to the filing of the tax liens. Moreover, the Government agrees that if the chattel mortgage stood as additional security for the loan secured by the real estate mortgage it should also be considered to be security for the debt arising from a deficiency judgment after default on that loan and foreclosure of the real estate mortgage. As the district court stated, "a deficiency judgment obtained after a mortgage foreclosure is not a new debt. It is simply what remains unpaid on the original bond. . . . ."

■ We believe that the "dragnet" clause of the chattel mortgage agreement encompassed the contemporaneously made real estate bond and mortgage and therefore also covered the debt arising from the default on foreclosure of that mortgage.

New York courts have for many years construed *future* advance clauses liberally. Ackerman v. Hunsicker, 85 N.Y. 43, 47 (1881). The Uniform Commercial Code also supports the use and validity of future advance clauses. Uniform Commercial Code § 9–204(5) (McKinney 1964).

If provisions which encompass future advances are upheld even though no actual notice is assured to intervening creditors, then *a fortiori* a clause expressly including contemporaneous obligations is valid to establish a priority over loans by subsequent creditors. It would be simpler for future creditors to determine whether there were any "existing" obligations owed by the borrower to his previous creditor than for them to discover subsequent loans which become subject to future advance clauses.

■ The contractual provision is clear and unambiguous in stating that the equipment was security for the note "as well as for the payment of any other obligation or liability . . . due or to become due whether now existing or hereafter arising." The clause would be effective and sufficient to put a subsequent creditor on notice. Cf. UCC § 9–204(5). We should neither interpret away the obvious meaning of the words involved nor supply additional meanings to them. See Porter v. Commercial Casualty Insurance Co., 292 N.Y. 176, 183–184, 54 N.E.2d 353 (1944).

This circuit has followed the New York lead regarding such provisions as, indeed, it must. See Epstein v. Trade Bank and Trust Co., 149 F.2d 261, 263 (2d Cir. 1945). Moreover, other federal courts have upheld similar state laws. See, e.g., Kenneally v. Standard Electronics Corp., 364 F.2d 642, 647 (8th

Cir. 1966) (upholding a "dragnet" clause under the law of Minnesota).

We conclude that the chattel mortgage, by virtue of its "dragnet" clause, stood as additional security for the then "existing" obligation of the $50,000 loan.

The order of the district court is reversed. The State Bank of Albany should be awarded the surplus realized from the sale of the chattels which were subject to the chattel mortgage to the extent necessary to satisfy the deficiency on the real estate mortgage foreclosure.

OAKES, Circuit Judge (concurring):

I concur in the judgment and in the opinion of Judge Hays. I do so reluctantly because the effect of "dragnet" clauses is to protect larger or institutional creditors against smaller trade creditors or subsequent lien holders. But we are bound by the language of the Uniform Commercial Code and the New York case law, so that therefore I concur.