TIMOTHY A. SMITH vs. CHRISTOPHER WHITNEY.

Worcester. October 1, 1888. — October 19, 1888.

Present: MORTON, C. J., DEVENS, W. ALLEN, C. ALLEN, & KNOWLTON, JJ.

*Lease of Land — Removal of Building at end of Term — Trade Fixtures.*

A lease of land provided that the lessee might make additions and alterations in a wooden building thereon, which were to enure to the benefit of the premises at its expiration, and that he might erect other buildings on it for manufacturing purposes and remove them within a limit thereafter. The lessee altered and enlarged the wooden building and fitted it with machinery for a box factory, and erected near it a brick engine-house, complete in itself and wholly unconnected therewith, except that a tin flashing attached to the side of the wooden building was fitted closely to the roof of the engine-house to protect it from the weather. The engine and boiler were placed on solid foundations of masonry, the boiler was connected with an iron smoke stack running through the roof, and the engine was coupled with the machinery by belting and shafting. *Held,* that the engine-house was not an addition to the wooden building, but a building which the lessee had a right to remove, and that the boiler and engine, as well as the machinery, were removable trade fixtures.

CONTRACT to recover for breach of the covenants of a written lease of land, given by the plaintiff to the defendant, of which the following clauses alone are material:

"And it is further agreed that the said lessee may erect at his own expense any buildings which he may deem necessary for storehouses, or for manufacturing purposes, and shall have the right to remove the same at any time within three months after the expiration of this lease: provided such removal shall be made without damage to the property of said lessor.

"And it is further agreed that the said lessee may change the location of the lumber-house now on the premises, and make such alterations and additions to the same as said lessee may deem desirable: provided such additions shall be made wholly at the expense of said lessee, and provided also that such alterations or additions shall enure to the benefit of said premises at the expiration of this lease."

At the trial in the Superior Court, before *Aldrich,* J., evidence was introduced tending to prove the following facts.

At the beginning of the term, when the defendant took possession of the demised premises, the lumber-house referred to in

the lease was a rectangular wooden building, one story high, with shingled roof, and covered with unmatched boards, its dimensions being sixty by thirty feet. There was no floor on the lower story, but a flooring above, forming an attic. Soon afterwards the defendant moved the lumber-house to another location on the leased premises, and extensively altered and enlarged the building, putting into it saws, planes, and other machinery for the manufacture of wooden boxes, and shafting and pulleys to run such machinery by steam power. At the same time he erected a brick building, twenty-three feet long and sixteen feet wide, at one end of the lumber-house, upon a stone foundation wholly unconnected with the foundations of the lumber-house. Each of the four brick walls was eight inches thick and nine feet high, and that next to the lumber-house was placed about three inches from its adjacent side, which in the enlargement was not clapboarded for the space covered by the wall. The brick building was covered by a tin and wooden roof with the gable end next to the lumber-house, and the tin and boards of the roof touched that side of the lumber-house, but neither the tin nor the boards were fastened to it. A tin flashing, or strip of tin ten or twelve inches wide, was nailed on to that side of the lumber-house, one edge thereof under the clapboards, in such a position as to conform to the line where the surface of the tin roof came in contact with it. The other edge of such flashing was bent out at right angles to the side of the lumber-house, and extended some six or eight inches out over the tin covering of the brick building, and fitted down as closely as possible to it, so as to exclude the water, but was not soldered or otherwise fastened. A doorway, in which a door was hung, was left in the brick wall next to the lumber-house, and a corresponding doorway was cut through the side of the lumber-house, as the means of passage between them. There was another outside door in the brick building, not connected with the lumber-house.

In the brick building were placed a boiler and steam-engine, both being placed on stone or brick foundations, set in the ground, the boiler being connected with an iron smoke stack extending through the roof. By means of belting passing through the brick wall next to the lumber-house, and attached to a shaft running under the sill of the latter and affixed to it

by a hanger, and by means of other pulleys and shafting, power was communicated to the machinery in the lumber-house. The brick building and the boiler and engine were used solely in connection with, and for furnishing the power to run, the machinery in the enlarged lumber-house, and there was no other power on the premises. Within the term, the defendant ceased to use the lumber-house as a box factory, and took out the machinery and took down and carried away the brick building and the boiler and engine. In doing so he left the tin flashing on the side of the lumber-house, and it so remained at the end of the term.

The defendant testified that the brick building to contain the boiler and engine to operate the machinery was a part of his plan to change the lumber-house into a box factory, that he made no other provision for power, and that he intended not to connect said brick building with said lumber-house. The plaintiff testified that he drew the lease himself, and at the time supposed some manufacturing business was to be commenced there, and that he understood machinery was going to be run, and contended that the brick building and the engine and boiler belonged to him under the terms of the lease, but did not contend that any unnecessary injury was done to the lumber-house in removing the brick building, or that any injury was done to it except in taking it away.

The judge ruled that the defendant had the right to remove the building and the boiler and engine. The jury returned a verdict for the plaintiff upon another issue; and the plaintiff alleged exceptions to the above ruling.

*F. P. Goulding*, for the plaintiff.

*W. S. B. Hopkins*, (*W. T. Forbes* with him,) for the defendant.

W. ALLEN, J. We are of opinion that the engine-house was not an addition to the lumber-house, but a building which the defendant had a right under the lease to remove. The lumber-house was a wooden building, and extensive alterations and additions were made to it, and it was fitted with machinery for a box factory. The building in question was erected near to it, and was not, in its construction or in its use, a part of it. It was built of brick, complete in itself, and was not connected

with the other building. Its only use was as a house for the engine which furnished power to the factory, and which was connected with the machinery in the factory by belts and shafting. The engine and machinery were trade fixtures, which could be removed by the defendant. The fact that the engine was so connected with the machinery in the factory did not make the engine-house a part of the factory building. On the contrary, the purpose of its erection, for the protection of a fixture which could be removed as personal property of the defendant, as well as the manner of its construction, shows that it was not an addition to the lumber-house, but a building which the defendant could remove before or after he should remove the engine.

*Exceptions overruled.*