# MARTIN N. MOFFAT v. JOHN T. WHITE AND OTHERS.[1]

May 27, 1938.

No. 31,576.

[1]Reported in 279 N. W. 732.

*Walter U. Hauser,* for appellant.

*Oscar Hallam,* for Minnesota Oil & Refining Company, respondent.

JULIUS J. OLSON, JUSTICE.

This action was brought by plaintiff, owner of certain real estate located at the corner of Vandalia street and University avenue in St. Paul, against defendants, who had been or were during the time here material lessees of the mentioned premises. The action is one in conversion to recover the value of a wire fence, three large tanks with checkers or gauges, a motor, a galvanized iron pump house, four electric meter pumps, and a steam boiler, all of these being of the alleged fair and reasonable market value of $3,850. The answer pleaded the general issue, and among other defenses also pleaded a release or covenant not to sue, made and dated long after these items had been removed, purporting to discharge defendants, "or either or any of them, or their, or either of their, successors or assigns, for or on account of any other claims of the undersigned [present plaintiff] of whatsoever nature, present or contingent." In avoidance plaintiff was permitted to amend his reply insofar as the answer related to this instrument that the same "is the result of a mutual mistake between the parties." There was direction of verdict for all defendants except Minnesota Oil & Refining Company. As to it the case was submitted to a jury, who returned a verdict for plaintiff for $2,000. Its motion for direction of verdict had been denied. After rendition of verdict it moved in the alternative for judgment or new trial. The court granted the motion for judgment, and plaintiff appeals. Hereafter we shall refer to Minnesota Oil & Refining Company as defendant.

The principal and, we think, decisive question is whether the involved property consists of trade fixtures. It will therefore be necessary rather fully to cover the facts picturing the background

and forming the basis for the conflicting contentions of the parties.

Over a period of many years prior to April 15, 1924, plaintiff was the owner of the mentioned real estate. On that day he entered into a 50-year lease with defendant White, who assigned the lease to White Oil Company, and it was later assigned to defendant. While the property was in the possession of Mr. White and his company there were erected upon the premises a bulk oil plant and retail filling station with the following equipment: Toward the front of the property on University avenue a stucco retail filling station building was erected with the usual signs and other equipment. A double concrete driveway connecting the station with the street was constructed in front of that building. Between the mentioned driveways a concrete island or platform running parallel with the driveways was also constructed; and upon the latter were placed four electric meter gasolene pumps held in place with the customary bolts fastened in the concrete base. A pipe connected these pumps with large underground tanks. The pumps only were removed by defendant, the island or platform being left intact, as were also the building, the tanks, and the concrete driveways. All these were later used by subsequent tenants.

Behind the station building were also placed six vertical and two horizontal aboveground storage tanks. The vertical tanks were set up on concrete foundations but were not attached thereto. They merely rested on the concrete. Three of these vertical tanks were removed by defendant. The foundations upon which they rested were left in place and are suitable to support other tanks for similar purposes. The other five tanks were left on the premises.

There was a boiler used for refining purposes which was placed in a warehouse located upon the property. The boiler was attached from above and was removed by defendant by unscrewing the bolts and pipes. When removed nothing was left except the bare floor.

There was also erected a small pump house, seven or eight feet in height, resting upon a five-foot cement foundation. The upper portion thereof was constructed of galvanized iron or sheet metal. Defendant removed only the upper portion, removal being accomplished by unscrewing bolts attaching it to the cement foundation.

The foundation was left in place and has been put to use by subsequent tenants. There was also a "Bowser" meter, an appliance which computes the gallonage removed. Defendant unscrewed it from the pipe to which it was attached and removed it.

Defendant also removed a heavy wire fence, something like 50 feet in length, attached to iron posts two inches in diameter which were set in a small amount of cement placed in the ground around each after having been so inserted. There was no other permanency connected with it, and apparently no harm to the real estate as such resulted by its removal.

The tenant also placed a five-horsepower electric motor in the pump house. This motor was attached to an iron base, which in turn was fastened to the floor by means of bolts. To remove it all that was required was to unscrew bolts, thus leaving the cement floor bare.

All of the mentioned equipment and appliances were installed by the tenants for trade purposes and at their expense. Everything pertaining to what has been listed above was left except the items concerning which plaintiff complains.

Some considerable time after the removal of this property and in connection with the settlement of certain other litigation, plaintiff executed a covenant not to sue, which among other things provided that he "will never at any time or place commence or prosecute any action or suit, or make any claim or claims against," the defendants "or either or any of them, or their, or either of their, successors or assigns, for or on account of any other claims of the undersigned [plaintiff] of whatsoever nature, present or contingent."

We think there are two questions here: (1) Whether the items hereinbefore mentioned were trade fixtures and as such removable by the tenant; and, if this be answered in the negative, then (2) what is the effect to be given the so-called covenant not to sue? If the first question is answered in the affirmative, the action being one in conversion and not founded upon a claim of substantial injury to the real estate by reason of the removal, consideration of the second question need not be gone into.

■ There is great diversity among the cases as to what is a fixture. Much necessarily depends upon whether the question arises between landlord and tenant, vendor and vendee, mortgagor and mortgagee, and other similar situations. The intent of the person who affixes the chattel to the land, whether it be installed with intent that it shall be a permanent part thereof or is to remain only temporarily, is often controlling. Intent between landlord and tenant is one thing, but quite another is the intent on the part of an owner who sells either by deed or contract of conveyance as to whether the affixed article is realty. We are not concerned with anything here except the right to these fixtures and equipment arising by reason of the relationship of landlord and tenant. This court had occasion in Northwestern Lbr. & W. Co. v. Parker, 125 Minn. 107, 111, 145 N. W. 964, 965, to consider this question. Among other things the court there said:

"When the question arises between landlord and tenant, different considerations enter into the case. Modern decisions have ingrafted on the law of fixtures an exception, due to the growing necessities of trade, that certain articles ordinarily fixtures, attached by a tenant for trade purposes, may be removed during the tenancy. Such articles are known as 'trade fixtures.' [Citing cases.] If an article has acquired the character of a 'trade fixture,' the later cases hold that it is removable by the tenant, no matter how firmly attached, so long as such removal does not result in material and permanent injury to the freehold." (Citing cases.)

The opinion cites with approval Wiggins Ferry Co. v. Ohio and M. Ry. Co. 142 U. S. 396, 416, 12 S. Ct. 188, 35 L. ed. 1055, and states:

"Indeed, it is difficult to conceive that any fixture, however solid, permanent and closely attached to the realty, placed there for the mere purposes of trade, may not be removed at the end of the term."

A case similar to the present in most respects is Standard Oil Co. v. La Crosse S. A. Service, Inc. 217 Wis. 237, 244-245, 258 N. W. 791, 794, 99 A. L. R. 60, 65, where the court said:

"It is clear that the tanks and pumps were trade fixtures installed upon the premises by the plaintiff for temporary purposes connected with its business. * * * As before stated, this court has adopted a very liberal rule with respect to trade fixtures which permits tenants to remove them, even in the absence of express stipulation. [Citing cases.]

"Trade fixtures are ordinarily installed or attached to the freehold by the tenant for his own use and for the purpose of promoting his business, and with no intention on his part or on the part of anyone that such trade fixtures shall become, as a result of mere annexation, a part of the freehold. We are of the opinion that our liberal rule with respect to trade fixtures is sound and just, is promotive of business, fosters the leasing of premises, and works no injustice to prior or existing mortgagees who are protected in situations where such fixtures may not be removed without material or substantial injury to the freehold."

And further (that case involved conflicting rights between the tenant and a mortgagee of the landowner) [217 Wis. 245]:

"We consider the following rule to be just: Where land is mortgaged and the mortgagor is not prohibited from leasing the premises, and the premises are in fact leased to one who installs therein or thereon trade fixtures for temporary purposes connected with his business or in furtherance thereof, which trade fixtures may be removed without material injury to the freehold upon the termination of the lease, removal of such trade fixtures should be allowed as against the mortgagee."

The annotation in 99 A. L. R. p. 69, *et seq.*, refers to other cases where storage tanks or other apparatus of gasolene stations as fixtures are considered. Reference also is made to prior annotations in 17 A. L. R. 1221, 36 A. L. R. 447, and 52 A. L. R. 798.

As will be seen by reference to the annotated cases, there is considerable conflict in the decisions, but we think the rule announced in the cases of Northwestern Lbr. & W. Co. v. Parker, and Standard Oil Co. v. La Crosse S. A. Service, Inc. *supra*, represent the weight

of authority, and to the rule there stated we adhere. In so doing we need not go as far as did the Wisconsin court in the cited case.

In 26 C. J. p. 701, [§ 87] d., trade fixtures are defined thus:

"An article may be regarded as a trade fixture if annexed for the purpose of aiding in the conduct by the tenant of a calling exercised on the leased premises for the purpose of pecuniary profit, * * *" (The supporting cases are found under note 92.)

The mere fact that such fixtures may be firmly attached does not in and of itself deprive the improvement from being classified as a trade fixture and as such removable. This is clearly so recognized and applied in Wiggins Ferry Co. v. Ohio and M. Ry. Co. and Standard Oil Co. v. La Crosse S. A. Service, Inc. *supra*. Here the evidence abundantly sustains the court's holding, implicit in the order here for review, that the removed fixtures resulted in no permanent injury to the freehold. And, as we have seen, plaintiff's cause is not founded upon the theory of injury to the freehold but is one in conversion for the value of the items removed. The conduct of the trial points unerringly in this direction, as the proof was directed to the commercial value of each of the removed items.

■ Taking up the various items of property removed and applying decided cases to each, we find that as to the four electric meter pumps set up on the concrete island and connected by means of bolts, the case of Cameron v. Oakland County G. & O. Co. 277 Mich. 442, 452, 269 N. W. 227, 230, 107 A. L. R. 1142, is instructive. This statement is especially significant:

"The right of the tenant to remove the erections made by him in furtherance of the purpose for which the premises were leased is one founded upon public policy and has its foundation in the interest which society has that every person shall be encouraged to make the most beneficial use of his property the circumstances will admit of."

In Pabst v. Ferch, 126 Minn. 58, 147 N. W. 714, L. R. A. 1915E, 822, a gasolene engine and equipment for obtaining water on a farm were held removable.

As to the gasolene storage tanks, it appears that these were not set down into the foundation but merely rested on top thereof. Only the tanks were removed, the foundation being left unimpaired. It is suitable for supporting other tanks of similar type. The removal caused no damage to the premises, as there are no bolts or rods left protruding from the foundation. In Hedges v. First Nat. Bank, 170 Okl. 175, 39 P. (2d) 57, the court held such storage tank was a trade fixture and as such removable. The same is true in respect to the boiler. It was only three feet in diameter and eight feet in height. Its fastening was by means of bolts and piping. It was removed by merely unscrewing the bolts. The bare floor was left. In Cohen v. Whitcomb, 142 Minn. 20, 21, 170 N. W. 851, the tenant had built a boiler on a foundation in the basement. It was held removable by the tenant in spite of the fact the lease provided that "improvements, repairs or alterations" made by the lessee were to be the property of lessor and not to be removed from the building. Similar in substance and effect is Cooper v. Johnson, 143 Mass. 108, 9 N. E. 33.

The pump house was an insignificant affair located in the back part of the yard. It was built of galvanized iron upon a five-foot high cement foundation. The metal part was unscrewed and removed, the foundation being left in place and has been used by subsequent tenants. There are many cases holding that buildings and structures of this type are removable as trade fixtures. Armour & Co. v. Block, 147 Ga. 639, 95 S. E. 228, 229; Ray v. Young, 160 Iowa, 613, 142 N. W. 393, 46 L.R.A.(N.S.) 947, Ann. Cas. 1915D, 258; Smith v. Whitney, 147 Mass. 479, 18 N. E. 229; Snow v. Smith, 86 Vt. 58, 83 A. 269; Van Ness v. Pacard, 2 Pet. (U. S.) 137, 7 L. ed. 374. In the last cited case the applicable syllabus paragraph, sustained by the opinion, reads:

"The question whether fixtures erected for the purposes of trade, are or are not removable by the tenant, does not depend upon the form or size of the building; whether it has a brick foundation or not, or is one or two stories high; or has a brick or other chimney.

The sole question is, whether it is designed for the purposes of trade or not."

The fence, too, is an unimportant item, but here also we find cases upholding a tenant's right to remove fences when they may be removed without harm to the real estate. See Schultz v. Seiler Motor Car Co. 243 Ky. 459, 48 S. W. (2d) 1068.

The electric motor was bolted to a cement floor. It was detached by merely unscrewing the bolts. We think this clearly was a trade fixture and as such removable.

As an item of importance, too, is the fact that upon the tenant devolved the duty of paying all taxes upon the leased property, including also special assessments.

■ Plaintiff heavily relies upon paragraph seven of the lease, which as far as here material provides:

"Provided that the lessee may not without the written consent of the lessors remove any of the buildings now on said land until after he has erected new buildings or income-producing improvements equal in value to the buildings which he desires to remove."

It is plaintiff's contention that the reference to "income-producing improvements" indicates an intention to give the landlord the right to trade fixtures. With this claim we are not in accord. The rule is well stated in the first syllabus paragraph in In re Howard Laundry Co. (2 Cir.) 203 F. 445, as follows:

"Whether valuable machines placed on premises leased for a term of years were trade fixtures, and removable as between the landlord and the tenant's trustee in bankruptcy, depended on whether the various machines could be removed without substantial injury to the building; and this, notwithstanding a clause in the lease providing that all additions and improvements which might be made by either party to or upon the premises should be the property of the landlord, as such provision should be construed to apply to permanent additions to the building, and not to personal property which, for business purposes, is temporarily and detachably fastened to the floor or ceiling of the building."

The court in the opinion refers to many cases bearing upon this phase. They may be found at pp. 447 and 448.

What has been said obviously leads to an affirmance without the necessity of considering the so-called release or covenant not to sue. It may not be improper, however, to remark that "one seeking a settlement and release has the right to buy peace from all future contention on then existing claims of every character." Houston v. Trower (8 Cir.) 297 F. 558, 561. "A release is not only evidence of the relinquishment, but, of itself, extinguishes the pre-existing obligation." Laughren v. J. S. Nolan Sales Stable Co. 163 Minn. 85, 88, 203 N. W. 445, 446. And where, as here, the claimed mistake is unilateral and neither fraud nor inequitable conduct on the part of defendant is shown, the resulting hurdle would appear to be an insurmountable one.

The order is affirmed.

