STATE OF MINNESOTA

IN SUPREME COURT

A15-1920

Tax Court                                                                                Anderson, J.

Commissioner of Revenue,

        Relator,

vs.                                                                    Filed:  August 31, 2016
                                                                       Office of Appellate Courts
Dahmes Stainless, Inc.,

        Respondent.

———————————

Lori Swanson, Attorney General, Sara L. Bruggeman, Assistant Attorney General, Saint Paul, Minnesota, for relator.

Mark A. Pridgeon, Edina, Minnesota, for respondent.

———————————

S Y L L A B U S

1.      Respondent's application for attorney fees was timely filed.

2.      The tax court did not abuse its discretion by awarding attorney fees to respondent because relator's position was not substantially justified.

Affirmed.

O P I N I O N

ANDERSON, Justice.

Relator Commissioner of Revenue challenges the tax court's award of attorney fees to respondent Dahmes Stainless, Inc. (Dahmes) under the Minnesota Equal Access to Justice Act (MEAJA). Minn. Stat. §§ 15.471-.474 (2014). The two issues presented are whether Dahmes's MEAJA application for attorney fees was timely filed under Minn. Stat. § 15.472(b) and whether the tax court abused its discretion by awarding attorney fees to Dahmes based on its determination that the Commissioner's position was not "substantially justified" under Minn. Stat. § 15.472(a). We affirm the tax court's award of attorney fees.

I.

Dahmes is a Minnesota corporation that manufactures, sells, and installs industrial equipment, the majority of which are "drying systems," such as spray dryers and fluid-bed dryers, in addition to heat recovery and evaporation systems, and other equipment (collectively products). Dahmes's products are generally used for dehydrating some type of liquid or liquid-bound commodity. The products are generally installed and enclosed within a customer's building. Sometimes the products are left free-standing; other times they are installed to an anchored framework or fastened directly to a building floor. None of Dahmes's products provides structural support, protection from the elements, insulation, temperature-control functions, or any other type of support for the building housing the products. Dahmes's products may be relocated or removed without substantial damage to the building.

2

In this case, although Dahmes properly collected sales tax from its customers on the retail sales of its manufactured products, *see* Minn. Stat. § 297A.61, subd. 4(a)(1) (2014), the Commissioner assessed additional use taxes and interest, totaling approximately $364,856, on the components that Dahmes purchased to manufacture its products (such as fans, pumps, burners, and motors), under Minn. Stat. § 297A.61, subd. 4(d) (2014). Under subdivision 4(d), a taxable "retail sale" is defined as a "sale of building materials, supplies, and equipment to owners, contractors, subcontractors, or builders for the erection of buildings or the alteration, repair, or improvement of real property." The Commissioner determined that, rather than tangible personal property, Dahmes's products constituted improvements to real property because they are common law "fixtures." Therefore, the Commissioner concluded, Dahmes's purchases of the components used to manufacture its products were taxable "retail sales" subject to use taxes under subdivision 4(d) because they were sales of building materials, supplies, or equipment for the "improvement of real property."[1]

The tax court disagreed, determining that Dahmes's products are tangible personal property and not improvements to real property. The tax court concluded, therefore, that the Commissioner erred by assessing use taxes because Dahmes's component purchases

---

[1] We do not address whether the product components meet the definition of "building materials, supplies, and equipment" under Minn. R. 8130.1200, subp. 1(A) (2015). The tax court declined to reach this issue because it was unnecessary to do so based on its other conclusions.

3

were not taxable retail sales of building materials, supplies, or equipment for the "improvement of real property." *See* Minn. Stat. § 297A.61, subd. 4(d).

After the tax court issued its order, Dahmes filed a MEAJA application for attorney fees. *See* Minn. Stat. § 15.472.[2] The tax court held that the Commissioner's position was not "substantially justified" by a "reasonable basis in law and fact," Minn. Stat. §§ 15.471-.472, and therefore awarded Dahmes $38,677.50 in attorney fees, *Dahmes Stainless, Inc. v. Comm'r of Revenue*, No. 8228-R, 2015 WL 5793705, at *4-5 (Minn. T.C. Oct. 1, 2015). The Commissioner now appeals the order awarding attorney fees.[3] The Commissioner argues that (1) Dahmes's application for attorney fees was untimely filed, Minn. Stat. § 15.472(b), and (2) the tax court abused its discretion by determining that the Commissioner's position was not "substantially justified," Minn. Stat. § 15.472(a).

## II.

We first address whether Dahmes's application for attorney fees was timely under Minn. Stat. § 15.472(b). The Commissioner argues that the application was untimely, and therefore the tax court lacked jurisdiction[4] for two reasons: (1) the application was not

---

[2] Dahmes also moved for an award of $2,565 in costs and disbursements, Minn. Stat. § 271.19 (2014); Minn. R. 8610.0150 (2015), which the tax court granted. The Commissioner did not appeal the award of costs and disbursements.

[3] The Commissioner did not appeal the tax court's order that reversed the Commissioner's assessment of additional use taxes. Rather, the Commissioner is appealing only the tax court's order of October 1, 2015, which awarded attorney fees to Dahmes.

[4] In the context of a filing deadline for tax appeals, we have stated: "[T]he courts and administrative agencies have no power to extend or modify the periods of limitation

4

timely filed "within 30 days of [the] final judgment" of the tax court, Minn. Stat. § 15.472(b), and (2) even under the tax court's interpretation of the "final judgment" date, the initial application did not contain a sufficient itemization of attorney fees, and the supplementary filing of an itemized statement was untimely. We address each in turn.

A.

A party seeking an award of attorney fees and expenses must apply "within 30 days of final judgment in the action." Minn. Stat. § 15.472(b). On April 7, 2015, the tax court filed an order reversing in part the Commissioner's tax assessment, which required the Commissioner to file a corrected tax assessment. On May 13, 2015, the tax court filed its order for judgment affirming the Commissioner's corrected tax assessment "in the amount of $3,324.55, plus interest of $742.33" and directing that "entry of judgment [be] stayed for 15 days" to allow for posttrial motions. No posttrial motions were filed, and judgment was entered 15 days later, on May 28, 2015. Dahmes's MEAJA application was filed on June 23, 2015.

The Commissioner argues that the June 23 filing of Dahmes's MEAJA application was untimely because it was not filed within 30 days of final judgment, based on the May 13 filing of the tax court's order for judgment. According to the Commissioner, the time for filing a MEAJA application began to run on the date the tax court filed its order, not when it entered judgment. The tax court disagreed, reasoning that May 13 was not the date

<hr>

prescribed by statute. The legislature has set the filing deadline for tax appeals, and when the deadline expires, the tax court no longer has jurisdiction over the claim." *Langer v. Comm'r of Revenue*, 773 N.W.2d 77, 81 (Minn. 2009) (citations omitted).

5

of "final judgment" because the entry of judgment was explicitly "stayed for 15 days" to allow posttrial motions and was not completed until May 28. The tax court further reasoned that "the statutory scheme," Minn. Stat. § 271.08 (2014), "clearly calls for two distinct actions: the filing of a written order, followed by the entry of judgment with respect to that order," *see id.*, subds. 1 (providing that the tax court must "determine every appeal by written order containing findings of fact and the decision of the tax court"), 2 (providing that upon the filing of such written order, "judgment shall be entered thereon in the same manner as in the case of an order of the district court"). According to the tax court, it is only the second of those two actions, the entry of final judgment, which allows the clock to run on the filing of a MEAJA application.

No Minnesota cases have directly addressed whether the 30-day time period in section 15.472(b) begins to run on the date that an order for judgment is filed, or on the date the judgment is entered. The plain language of the statute states that the 30-day time period begins with "*final judgment* in the action." Minn. Stat. § 15.472(b) (emphasis added). The term "final judgment" is not defined in this statute.[5] Because the tax court's

---

[5]    The Commissioner points to *Express Scripts, Inc. v. Comm'r of Revenue*, No. A12-1966, Order (Minn. filed Jan. 18, 2013), a tax case involving the appealability of a "final order." The applicable statute provides that a party may appeal a "final order" of the tax court "[w]ithin 60 days after notice of the making and filing of the order." Minn. Stat. § 271.10, subd. 2 (2014). The tax court in *Express Scripts* filed its order but stayed the order for 15 days to allow the parties to consider whether to file posttrial motions. We held that "the stay cannot extend the statutory appeal period beyond 60 days." *Express Scripts*, No. A12-1966, Order at 3 (citation omitted). That case is distinguishable because the applicable statute provided that the 60-day time period would begin to run at the "making and *filing* of the *order*," Minn. Stat. § 271.10, subd. 2 (emphasis added); whereas here, the time period under Minn. Stat. § 15.472(b) began to run at "final judgment." It is significant

order for judgment directed that the entry of judgment be stayed for 15 days, that stayed "judgment" was not "final." Thus, there was no "final judgment" when the order for judgment was filed but stayed on May 13, 2015.[6] Rather, judgment became final 15 days later when the stay expired and judgment was entered.[7] Therefore, Dahmes's MEAJA application was timely under section 15.472(b) because it was filed on June 23, 2015, which is within the 30-day time limit after the entry of judgment on May 28, 2015.

B.

The Commissioner also argues that, even if the date of "final judgment" is May 28, 2015 (the date of entry of judgment), Dahmes's MEAJA application is still untimely because Dahmes's initial application did not contain a sufficiently itemized statement of attorney fees, as required by Minn. Stat. § 15.472(b), and Dahmes's supplemental affidavit, with additional itemization, was filed on July 16, 2015, which was after the 30-day period

---

that the Legislature chose the language "final judgment," rather than the "filing" of an "order" as in Minn. Stat. § 271.10, particularly in light of a statutory scheme that calls for two distinct actions: the filing of the written order and the entry of judgment on that order. *See* Minn. Stat. § 271.08, subds. 1, 2.

[6] The Commissioner also argues that the date of "final judgment" was the date the order for judgment was filed, May 13, because, under Minn. Stat. § 271.12 (2014), "every order of . . . the Tax Court shall take effect immediately upon the filing thereof." We disagree. The order was immediately "effective" because the 15-day stay directed by that order began to run immediately on filing. Section 271.12 is about effectiveness, not finality.

[7] The tax court ordered the 15-day stay of entry of judgment on its order to allow the parties to file posttrial motions. As a practical matter, the Commissioner's argument that we should ignore the 15-day stay is in tension with one of the basic premises of a stay. At least one reason for a stay is to give the parties an opportunity to bring errors that need correction to the attention of the tax court before the entry of a final judgment is made.

7

had expired. An application must "includ[e] an itemized statement from any attorney or expert witness representing or appearing on behalf of the party stating the actual time expended and the rate at which fees and other expenses were computed." Minn. Stat. § 15.472(b).

Dahmes's application included an affidavit by its attorney, showing how fees and other expenses were computed. The affidavit stated the actual time expended, the attorney's hourly rate, and a list of costs. The affidavit also included a table of monthly attorney fees from the years 2010 through 2015. At the tax court, the Commissioner argued that this statement of fees was not sufficiently "itemized" under section 15.472(b). In response, Dahmes submitted a supplemental affidavit by its attorney on July 16, 2015, which contained additional itemization from invoices. At the tax court hearing, the Commissioner argued that this supplemental filing should not be allowed and that the failure to include sufficient itemization within the 30-day deadline was a "bar to relief." On appeal, the Commissioner argues that this supplemental affidavit is another reason why Dahmes's attorney-fees application was untimely filed.

The tax court allowed Dahmes to file the supplemental affidavit, concluding that the Commissioner's objection to supplementation was "without merit."[8] No Minnesota cases

---

[8]     The tax court relied on a prior tax court decision that allowed a procedural requirement of section 15.472(b) to be met based on a supplemental affidavit, which was apparently filed more than 30 days after the applicable final judgment. *See Midwest Brokers Inc. v. Comm'r of Revenue*, No. 7237-R, 2001 WL 1007804, at *1-2 (Minn. T.C. Aug. 28, 2001). The *Midwest Brokers* court stated that the appellant's MEAJA motion under Minn. Stat. § 15.472 was "timely" but did not directly address any timeliness issues related to the supplemental affidavit. 2001 WL 1007804, at *1.

have directly addressed the timeliness question of supplemental filings made after the 30-day deadline in Minn. Stat. § 15.472(b), in the context of a claim of insufficient itemization. The determination here is fact-dependent and should include some deference to the tax court's discretion to allow supplementation after filing deadlines, as in other contexts.[9] Under section 15.472(b), an application for attorney fees requires the submission of an "itemized statement" of fees. The statute does not define what "itemized statement" means, other than requiring that the statement show "the actual time expended and the rate at which fees . . . were computed." Minn. Stat. § 15.472(b). Here, Dahmes's initial affidavit showed the actual time expended, the attorney's hourly rate, a list of costs, and a table of monthly fees charged over a 5-year period. On the other hand, it is questionable whether the initial affidavit, which showed total hours at a monthly level, conveyed enough information to satisfy the section 15.472(b) requirement of an "itemized statement." Beyond monthly hours incurred, the initial affidavit did not provide task-level itemization, i.e., the hours incurred for each task performed and descriptions for each task. But in this case, we need not analyze or decide the meaning of "itemized statement," nor whether the initial affidavit was sufficiently "itemized" under section 15.472(b). Even assuming the initial affidavit was not sufficiently itemized, we hold that the tax court did not abuse its discretion by

---

[9]     As an analogous example, under Rule 15.01 of the Minnesota Rules of Civil Procedure, a court has the discretion to allow amendments to pleadings, even after the deadline of "20 days" following service, "by leave of [the] court . . . when justice so requires." Minn. R. Civ. P. 15.01; *see, e.g.*, *Marlow Timberland, LLC v. Cty. of Lake*, 800 N.W.2d 637, 640 (Minn. 2011) ("[W]e see no prejudice to Lake County and no reason why justice would not be served by allowing Marlow Timberland to amend its petition . . . .").

9

allowing Dahmes to submit a supplemental affidavit with additional itemization after the 30-day deadline in section 15.472(b) had expired.[10]

III.

We next address whether the tax court abused its discretion by determining that the Commissioner's position in the tax litigation was not "substantially justified." Minn. Stat. § 15.472(a). We apply an abuse-of-discretion standard to review a tax court's award of attorney fees, including the determination of substantial justification. *See Wilson v. Comm'r of Revenue*, 707 N.W.2d 695, 698 (Minn. 2006). The tax court abuses its discretion when its decision is based on an erroneous view of the law, when its decision is against facts in the record, or when it exercises its discretion in an arbitrary or capricious manner. *See City of N. Oaks v. Sarpal*, 797 N.W.2d 18, 24 (Minn. 2011) (citing *Almor Corp. v. Cty. of Hennepin*, 566 N.W.2d 696, 701 (Minn. 1997)).

Under the MEAJA, the prevailing party (other than the state) in a civil case involving the state may submit an application for an award of attorney fees and expenses. *See* Minn. Stat. § 15.472. If the MEAJA application meets certain procedural requirements, *see* Minn. Stat. § 15.472(b), the court must grant the award of fees and expenses when the prevailing party "shows that the position of the state was not substantially justified . . . unless special circumstances make an award unjust," Minn. Stat.

---

[10]    The parties do not dispute on appeal that the supplemental affidavit satisfies the "itemized statement" requirement of section 15.472(b). The Commissioner argued before the tax court that both the initial and supplemental affidavits provided insufficient itemization. But the Commissioner has not raised the same argument here. On appeal, the Commissioner argues only that the initial affidavit was insufficiently itemized and that the submission of the supplemental affidavit was untimely.

§ 15.472(a). The MEAJA defines "substantially justified" to mean that "the state's position had a reasonable basis in law and fact, based on the totality of the circumstances before and during the litigation or contested case proceeding." Minn. Stat. § 15.471, subd. 8.

Although the Commissioner did not challenge the tax court's April 7, 2015 order reversing the tax assessment, we must turn to the merits of the litigation before the tax court to determine whether the Commissioner's position was "substantially justified" by a "reasonable basis n law and fact." *Id.* We examine each in turn.

## A.

In this case, the Commissioner assessed use taxes totaling $364,856 on certain components (such as fans, pumps, burners, and motors) that Dahmes purchased to manufacture its products.

The definition of a taxable "retail sale," which the Commissioner relied on to assess the additional use taxes, is a "sale of building materials, supplies, and equipment to owners, contractors, subcontractors, or builders for the erection of buildings or the alteration, repair, or *improvement of real property*." Minn. Stat. § 297A.61, subd. 4(d) (emphasis added). The Commissioner determined that, once manufactured and installed, Dahmes's products are improvements to real property, rather than tangible personal property, because they are common law "fixtures." Therefore, the Commissioner concluded, Dahmes's purchases of the components that it used to manufacture its products were taxable "retail sales" under subdivision 4(d) because they were purchases of building materials, supplies, or equipment for the "improvement of real property."

11

Thus, this case turns on whether Dahmes's products are considered improvements to real property, as the Commissioner argues, or tangible personal property, as Dahmes argues, which determines whether the component purchases for those products are taxable retail sales under Minn. Stat. § 297A.61, subd. 4(d).

Under chapter 297A, "tangible personal property" is defined in part as "personal property that can be seen, weighed, measured, felt, or touched, or that is in any other manner perceptible to the senses." Minn. Stat. § 297A.61, subd. 10(a). Chapter 297A does not provide a definition of "real property." However, a negative inference of "real property" is provided by Minn. Stat. § 297A.61, subd. 10(b)(1), which states that "tangible personal property" does *not* include "large ponderous machinery and equipment used in a business or production activity which at common law would be considered to be real property." The parties do not dispute that Dahmes's products are "large ponderous machinery and equipment" that are "used in a business or production activity." Minn. Stat. § 297A.61, subd. 10(b)(1). Rather, the dispute under this statute is whether Dahmes's products "at common law would be considered to be real property." *Id.*

1.

The Commissioner argues that Dahmes's products would be considered real property at common law because they are "fixtures" actually attached to the realty and are intended to be a nontemporary addition. Dahmes argues, and the tax court agreed, that Dahmes's products would not be considered "real property" at common law under the common-law doctrine of trade fixtures. Under this doctrine, a fixture is considered tangible personal property, rather than real property, when it is used for trade purposes and if

12

removal does not result in material and permanent damage to the real estate. *See, e.g.*, *Cent. Chrysler Plymouth, Inc. v. Holt*, 266 N.W.2d 177, 179-80 (Minn. 1978); *Moffat v. White*, 203 Minn. 47, 51-55, 279 N.W. 732, 734-36 (1938); *Behrens v. Kruse*, 121 Minn. 479, 483-87, 140 N.W. 114, 116-18 (1913). As the tax court correctly observed, we presume that the Legislature acts with full knowledge of existing law, including the common law. *Goodyear Tire & Rubber Co. v. Dynamic Air, Inc.*, 702 N.W.2d 237, 244 (Minn. 2005). Thus, based on the 1985 amendment to the definition of "tangible personal property," Act of May 8, 1985, ch. 83, § 1, 1985 Minn. Laws. 196, 196, which excludes what "at common law would be considered to be real property," we presume that the Legislature knew that at common law, trade fixtures were not considered real property.

In response, relying on *Abex Corp. v. Commissioner of Taxation*, 295 Minn. 445, 458-59, 207 N.W.2d 37, 45 (1973), the Commissioner argued that the trade-fixtures doctrine is not applicable to tax cases[11] but rather applies only to buyer-seller or landlord-tenant relationships,. In *Abex*, we described the (now-repealed) statute defining "real property," Minn. Stat. § 272.03, as providing that "fixtures are real property for purposes of taxation, and there is no differentiation between trade fixtures and other fixtures." 295 Minn. at 459, 207 N.W.2d at 45. And the *Abex* court also observed that "the trade-fixtures doctrine applies only in a landlord-tenant relationship." *Id.* at 458, 207 N.W.2d at 45. The Commissioner's reliance on *Abex* here is misplaced for the following three reasons.

---

[11] The parties do not dispute that Dahmes's products would constitute trade fixtures at common law. Rather, the primary dispute is whether the trade-fixtures doctrine is applicable to tax cases.

First, *Abex*'s analysis regarding section 272.03 and the applicability of the trade-fixtures doctrine was superseded by a 1973 statutory amendment, enacted shortly after *Abex* was decided. *See* Act of May 24, 1973, ch. 650, art. XXIV, § 2, 1973 Minn. Laws 1606, 1687. Thus, *Abex* is not applicable in this context, as two of our decisions after the statutory amendment have recognized. *Zimpro, Inc. v. Comm'r of Revenue*, 339 N.W.2d 736, 739-40 (Minn. 1983) (referring to the "inapplicability of *Abex*" and stating that "*Abex*, however, does not control the instant case" because the property-tax statute, Minn. Stat. § 272.03, subd. 1(c), "has been amended since the *Abex* decision"); *KDAL, Inc. v. St. Louis Cty.*, 308 Minn. 101, 104, 240 N.W.2d 560, 561 (1976) (recognizing the parties' agreement that "the exemption in question," Minn. Stat. § 272.03, subd. 1(c), "was enacted to change the law following our decision in *Abex*").[12] In combination with the statutory amendment, our *Zimpro* decision abrogated the holding in *Abex* that the property-tax statute does not "differentiat[e] between trade fixtures and other fixtures" and that "the trade-fixtures doctrine applies only in a landlord-tenant relationship." *Abex*, 295 Minn. at 458-59, 207 N.W.2d at 45. Indeed, the *Zimpro* decision established the opposite—that the newly amended definition of "real property" differentiates between trade and nontrade fixtures, as discussed further below. *See Zimpro*, 339 N.W.2d at 739 n.5.

Second, in *Zimpro*, we recognized that the trade-fixtures doctrine is relevant in tax cases. Our *Zimpro* decision interpreted the property-tax statute, Minn. Stat. § 272.03,

---

[12]    In her brief to both the tax court and our court, the Commissioner conceded that *Abex* (the decision upon which she relied to argue that the trade-fixtures doctrine is not applicable to tax cases) was subsequently "disregarded" by this court in *Zimpro*.

14

subd. 1(c) (2014) (defining "real property"), as incorporating the trade-fixtures doctrine and as including only nontrade fixtures within the definition of "real property." *See Zimpro*, 339 N.W.2d at 739 n.5. We explained that under the prior, superseded version of the property-tax statute (construed in *Abex*, 295 Minn. at 452, 207 N.W.2d at 42), the definition of "real property" included "fixtures" generally. However, *Zimpro* explained, the "present property tax statute . . . includes fixtures generally in its definition of real property but *excludes trade fixtures*." *Zimpro*, 339 N.W.2d at 739 n.5 (emphasis added) (citing Minn. Stat. § 272.03, subd. 1(c) (providing that "real property" does not include "tools, implements, machinery, and equipment attached to or installed in real property for use in the business or production activity conducted thereon, regardless of size, weight or method of attachment")).[13]

Third, the Commissioner argued incorrectly that *Zimpro* was superseded by the 1985 statutory amendment to the definition of "tangible personal property" in chapter 297A. Act of May 8, 1985, ch. 83, § 1, 1985 Minn. Laws. 196, 196. This amendment changed the definition of "tangible personal property" to its present language, which excludes "large ponderous machinery and equipment used in a business or production activity which at common law would be considered to be real property." Minn. Stat. § 297A.61, subd. 10(b)(1). Under the prior statute, which we discussed in *Zimpro*, the statute defined "tangible personal property" as "corporeal personal property of any kind

---

[13] This interpretation by the *Zimpro* court—that the definition of "real property" excludes "trade fixtures" under Minn. Stat. § 272.03, subd. 1(c)—remains good law today as that statutory provision has not been amended since *Zimpro* was decided.

whatsoever, including property which is to become a fixture or which is to lose its identity by incorporation in or attachment to real property." Minn. Stat. § 297A.01, subd. 11 (1982). The tax court disagreed that *Zimpro* was superseded, reasoning essentially that the language of the 1985 amendment did not reflect an intention to supersede *Zimpro*, but rather only a limited factual situation from another decision:

> We think it unlikely that the legislature's amendment of the definition of tangible personal property was meant to overrule *Zimpro*. The only information concerning the nature of the municipal sewage treatment equipment at issue in *Zimpro* . . . hardly describe[s] "large ponderous machinery and equipment used in a business or production activity."
>
> Rather, it is almost certain that the legislature's amendment of the definition of tangible personal property to create an exception for "large ponderous machinery and equipment" was meant to overrule our decision in *West Publishing Co. v. Commissioner of Revenue*, Docket No. 2822, 1981 WL 1510 (Minn. T.C. Dec. 1, 1981), in which we held that a 30-ton binding machine—specifically described in our decision as "a huge and ponderous machine"—was personal property whose purchase was subject to sales and use tax.

*Dahmes Stainless*, 2015 WL 5793705, at *5 n.8.

Although this factual distinction is somewhat persuasive, there is another reason that *Zimpro* applies. An entire decision is not necessarily "superseded" simply because a statute relied upon in the decision has been amended. Rather, specific points of law may be superseded while other points remain good law. Here, the relevant point of law is that the trade-fixtures doctrine is applicable to tax cases, based on our interpretation of the definition of "real property," Minn. Stat. § 272.03, subd. 1(c), as excluding "trade fixtures," *Zimpro*, 339 N.W.2d at 739 n.5. This point remains good law because section 272.03, subdivision 1(c), has not been amended since *Zimpro*. And the 1985 amendment to a

16

separate statute, which is now codified at Minn. Stat. § 297A.61, subd. 10(b)(1), providing that "tangible personal property" does not include "large ponderous machinery and equipment used in a business or production activity which at common law would be considered to be real property," does not supersede our interpretation in *Zimpro*. To the contrary, it fortifies our interpretation because the amendment to section 297A.61, subdivision 10(b)(1), explicitly and broadly incorporates the "common law," which includes the common-law doctrine of trade fixtures.

2.

In addition to chapter 297A, the parties also refer to Minn. Stat. §§ 272.01-.71 (2014), which address real property taxes. Unlike chapter 297A, chapter 272 provides definitions of "real property," which include the following relevant language:

(a) For the purposes of taxation, "real property" includes the land itself, rails, ties, and other track materials annexed to the land, and all buildings, structures, and improvements or other fixtures on it . . . .

(b) A building or structure shall include the building or structure itself, together with all *improvements or fixtures annexed to the building or structure*, which are *integrated with and of permanent benefit* to the building or structure, regardless of the present use of the building, and *which cannot be removed without substantial damage* to itself or to the building or structure.

(c) (i) Real property does not include tools, implements, *machinery, and equipment attached to or installed in real property for use in the business or production activity conducted thereon, regardless of size, weight or method of attachment* . . . .

Minn. Stat. § 272.03, subd. 1(a)-(c)(i) (emphasis added).

The Commissioner argued before the tax court that chapter 272's definitions of "real property" are applicable only to real property taxation, not to sales-tax or use-tax cases

17

under chapter 297A.[14]  This argument is contrary to our precedent.  The tax court correctly rejected this argument because we have recognized that chapter 272's definitions of "real property" are helpful and applicable in sales-tax and use-tax cases.  *See Zimpro, Inc. v. Comm'r of Revenue*, 339 N.W.2d 736, 739-40 (Minn. 1983).  In *Zimpro*, an appeal involving sales taxes, the appellant argued that the sales-tax statute (chapter 297A) and the property-tax statute (chapter 272) should not be "construed consistently" and that it would be unwise to "intermingl[e]" those statutes.  339 N.W.2d at 739.  We disagreed, stating that "reference to Minnesota Statutes chapter 272, the general provisions of the property taxation scheme, is helpful" in construing the sales-tax and use-tax provisions under chapter 297A, and that "use of chapter 272 definitions for sales and use tax purposes promotes certainty and consistency."  *Id.* at 739-40.

*Zimpro* then referred to an exclusionary definition of "real property" under Minn. Stat. § 272.03, subd. 1(c), one of the same definitions that Dahmes relies on here.  We concluded that "[j]uxtaposing this exclusion [from the definition of 'real property'] with the definition of tangible personal property contained in section 297A.01, subdivision 11, provides a consistent scheme of taxation."  *Id.* at 740.  *Zimpro* further observed that

---

[14]  On appeal, the Commissioner has apparently dropped this argument; her briefs do not explicitly argue that chapter 272 is applicable only to real property taxes and inapplicable to sales and use taxes, as the Commissioner argued before the tax court. Nonetheless, this argument remains relevant to analyze whether the Commissioner's position before the tax court was "substantially justified" under Minn. Stat. § 15.472(a). Moreover, the Commissioner's appellate briefs argue more generally that the tax court erroneously used the definition of "real property" in chapter 272, without fully explaining why it was erroneous.

18

"[c]learly, the legislature did not intend to exclude property from both the property tax statute and the sales tax statute." *Id.*

Our conclusion in *Zimpro* is similar to and supportive of Dahmes's core argument here: the definitions of "real property" in Minn. Stat. § 272.03, subd. 1(a)-(c)(i), combined with the definition of "tangible personal property" (and negative inference of "real property") in Minn. Stat. § 297A.61, subd. 10(b)(1), consistently provide that Dahmes's products are tangible personal property, not real property. Therefore, the purchases of components for those products are not subject to use taxes under Minn. Stat. § 297A.61, subd. 4(d) (providing that a taxable "retail sale" includes purchases of "building materials . . . for the . . . improvement of real property").

In addition, the Commissioner relied on Minn. R. 8130.1200 (2015), which provides guidance on what the term "real property" means in Minn. Stat. § 297A.61, subd. 4(d). Under this administrative rule, the term "real property" includes "structures that are permanently affixed to real estate, such as buildings, fixtures, machinery, fences, railroad tracks, grain elevators, bridges, storage bins, silos, outdoor advertising signs, and billboards." Minn. R. 8130.1200, subp. 1(B). Dahmes and the tax court did not refer to this rule. But the statutory language and our interpretation of those statutes control over an administrative rule. *See Billion v. Comm'r of Revenue*, 827 N.W.2d 773, 781 (Minn. 2013). Even if we considered the merits of the rule, as argued by the Commissioner, it would not alter our conclusion that Dahmes's products are not "real property" under the statutes and case law analyzed above. Rule 8130.1200 must be interpreted in harmony with the language in Minn. Stat. § 297A.61, subd. 10(b)(1), and Minn. Stat. § 272.03, subd.

19

1(a)-(c)(i), and the case law interpreting those statutes, as analyzed above. Accordingly, the Rule's inclusion of "fixtures" must refer only to nontrade fixtures. This interpretation is further supported by the Rule's requirement that a "fixture" be "*permanently* affixed" to constitute "real property." Minn. R. 8130.1200, subp. 1(B) (emphasis added). A trade fixture is excluded from this definition because a trade fixture must be removable without causing substantial damage.

### B.

In summary, the tax court correctly determined that Dahmes's products are "tangible personal property" and would not be considered "real property" at common law, Minn. Stat. § 297A.61, subd. 10(a), (b)(1), and moreover, that the products do not meet the definition of "real property" in Minn. Stat. § 272.03, subd. 1. Therefore, the tax court reversed the Commissioner's assessment of use taxes because Dahmes's purchases of components were not taxable under Minn. Stat. § 297A.61, subd. 4(d) (providing that a taxable "retail sale" includes purchases of "building materials . . . for the . . . improvement of real property"). After Dahmes filed its application for attorney fees, the tax court concluded that the Commissioner's position in the litigation was not "substantially justified" by a reasonable basis in law and fact, Minn. Stat. § 15.471(a), and therefore awarded Dahmes $38,677.50 in attorney fees.

The Commissioner argues that the application of section 297A.61, subdivision 4(d), to building-material purchases is an inherently complex area of tax law, which requires a difficult differentiation between tangible personal property and improvements to real property. Based on this complexity, the various statutory amendments and superseded case

20

law, the arguable incongruities between chapter 297A and chapter 272, and the lack of recent guidance from our court on section 297A.61, subdivision 4(d), the Commissioner argues that her interpretation of the law was not *unreasonable*. But on appeal, we are not reviewing this question de novo, i.e., whether we agree with the tax court that the Commissioner's position was unreasonable. Rather, we must perform a more deferential review of whether the tax court *abused its discretion* by determining that the Commissioner's position was unreasonable. *Wilson v. Comm'r of Revenue*, 707 N.W.2d 695, 698 (Minn. 2006).[15] Under this standard of review, and based on our analysis of applicable tax law and the Commissioner's position, we cannot say that the tax court abused its discretion.

Because the tax court did not abuse its discretion by determining that the Commissioner's position was not "substantially justified," Minn. Stat. § 15.472(a), we affirm the tax court's award of attorney fees to Dahmes. Our holding is based primarily on two incorrect arguments made by the Commissioner. First, the Commissioner argued incorrectly that the trade-fixtures doctrine is not applicable to tax cases. Second, the

---

[15] In *Pierce v. Underwood*, 487 U.S. 552 (1988), an appeal of an attorney-fees award under the federal Equal Access to Justice Act, the Court provided a helpful explanation of why an abuse-of-discretion standard should apply. The Court stated that the issue of substantial justification is "multifarious," "little susceptible . . . of useful generalization," and "likely to profit from the experience that an abuse-of-discretion rule will permit to develop." 487 U.S. at 560-61. The Court further reasoned that "because the number of possible situations is large, we are reluctant either to fix or sanction narrow guidelines" and that a deferential review is appropriate for "needed flexibility" and to support the goal that a "request for attorney's fees should not result in a second major litigation." *Id.* (citations omitted) (internal quotation marks omitted).

Commissioner argued incorrectly that chapter 272's definition of "real property," Minn. Stat. § 272.03, subd. 1, is applicable only to property-tax cases and is not applicable to sales-tax or use-tax cases under chapter 297A. These incorrect arguments resulted from (a) an incorrect reliance on several points of law from *Abex* that were superseded by statute and abrogated by *Zimpro*; (b) an incorrect determination that *Zimpro* was superseded by statute; and (c) a misreading or oversight of relevant points of law from *Zimpro*.[16] A position that misreads or overlooks statutes and relevant precedent by our court is not "substantially justified" by a "reasonable basis in law and fact." Minn. Stat. § 15.472(a); Minn. Stat. § 15.471, subd. 8. Therefore, the Commissioner is not entitled to relief.

Affirmed.

---

[16] The Commissioner argued only that her position was "substantially justified" under section 15.472(a). We observe that, although an attorney is also permitted to make a nonfrivolous, good-faith argument for the extension, modification, or reversal of existing law, *see* Minn. Stat. § 549.211, subd. 2(2) (2014); Minn. R. Prof. Conduct 3.1, the Commissioner did not do so here.